# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARKEE COOPER, SR., ZION COOPER and, MARKEE COOPER, JR., by and through their Parents and guardians MARKEE COOPER, SR. and SHENITA COOPER, <br><br> Plaintiffs, <br><br> v. <br><br> Chicago Police Officers S. DAILEY, No. 10890, M. BONNSTETTER, No. 15963, F. MACK, No. 198404, J. FRANO, No. 11772, R. PUCILLO, No. 16850, W. JOHNSON, No. 17442, A. MONACO, No. 19253, S. LAURETTO, No. 5882, V. FICO, No. 6284, L. WILLEMS, No. 7394, M. NAPOLI, No. 9560, S. REINA, No. 2622, D. ROSS, No. 177, G. DE SALVO, No. 218, and The CITY OF CHICAGO <br><br> Defendants. | Case No.: 07-cv-2144 <br><br> Judge Robert M. Dow, Jr. |

## MEMORANDUM OPINION AND ORDER

Markee Cooper, Sr., individually and on behalf of his minor sons Zion and Markee, Jr., filed a first amended complaint [56] asserting claims under Illinois state law and 42 U.S.C. § 1983 against the City of Chicago and fourteen individual Chicago police officers (the "Defendant Officers").[1] All of Plaintiffs' claims arise out of the February 17, 2007 search of Plaintiffs' home by the Defendant Officers, which was conducted pursuant to two search

---

[1] Shenita Cooper, Markee, Sr.'s wife and the mother of Zion and Markee, Jr., is not identified as a party in the Amended Complaint. While Shenita Cooper's name appears in the case caption, she is identified only as asserting claims on behalf of her minor sons, and not on her own behalf. However, Plaintiffs' Local Rule 56.1 statement states – and Defendants' admit in their response to Plaintiffs' 56.1 statement – that Shenita Cooper is a Plaintiff and is alleging violations of her Fourth Amendment rights. If Plaintiffs intend to include Shenita Cooper as a plaintiff on her own behalf, they must seek leave to amend their complaint to include her as a party.

1

warrants issued based on information that Defendants contend was provided by a confidential informant.

Currently before the Court is Plaintiffs' motion for partial summary judgment [101] as to liability on Count V, which asserts a Section 1983 claim alleging that the search violated Plaintiffs' Fourth Amendment rights.[2] For the reasons stated below, Plaintiffs' motion for partial summary judgment is denied.

**I.  Background**

The Court takes the relevant facts primarily from the parties' Local Rule ("L.R.") 56.1 statements[3]: Plaintiffs' Statement of Facts ("Pl. SOF") [102], Defendants' Response to Plaintiffs' Statement of Facts ("Def. Resp.") [126], Defendants' Statement of Additional Facts ("Def. SOAF") [123], and Plaintiffs' Response to Defendants' Statement of Additional Facts (Pl. Resp. [131].

---

[2] Count V is erroneously identified as Count VI in Plaintiffs' first amended complaint.

[3] L.R. 56.1 requires that statements of facts contain allegations of material fact and that factual allegations be supported by admissible record evidence. See L.R. 56.1; *Malec v. Sanford,* 191 F.R.D. 581, 583-85 (N.D. Ill. 2000). The Seventh Circuit repeatedly has confirmed that a district court has broad discretion to require strict compliance with L.R. 56.1. See*, e.g., Koszola v. Bd. of Educ. of the City of Chicago,* 385 F.3d 1104, 1109 (7th Cir. 2004); *Curran v. Kwon,* 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311, 1317 (7th Cir. 1995) (collecting cases)). Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider that statement. See*, e.g., Malec,* 191 F.R.D. at 583. Additionally, where a party improperly denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems that statement of fact to be admitted. See L.R. 56.1(a), 56.1(b)(3)(B); see also *Malec,* 191 F.R.D. at 584. The requirements for a response under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000). In addition, the Court disregards any additional statements of fact contained in a party's response brief but not in its L.R. 56.1(b)(3)(B) statement of additional facts. See, *e.g.*, *Malec*, 191 F.R.D. at 584 (citing *Midwest Imports*, 71 F.3d at 1317). Similarly, the Court disregards a denial that, although supported by admissible record evidence, does more than negate its opponent's fact statement—that is, it is improper for a party to smuggle new facts into its response to a party's L.R. 56.1 statement of fact. See, *e.g.*, *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008).

2

On February 16, 2007, Defendant Officer Sean Dailey swore out two complaints for warrants to search 1015 N. Laramie. Pl. SOF ¶ 8. In the first complaint, Dailey requested a warrant to search the basement apartment of 1015 N. Laramie for drugs and an individual named Lawrence Tolliver. Def. Resp. ¶ 10; Ex. 15 to Pl. SOF (complaint). Dailey stated in the complaint that, on February 16, 2007, a confidential informant told Dailey that he – the informant – had purchased "rocks" (crack cocaine) from an individual known as Lawrence Tolliver from a basement apartment at 1015 N. Laramie on several occasions over the prior three months, including on that day. Def. Resp. ¶¶ 10, 14. According to the complaint, Dailey drove the informant past 1015 N. Laramie, at which time the informant positively identified the building as the location of the basement apartment where he had purchased drugs from Tolliver. Ex. 15 to Pl. SOF (complaint). Dailey stated in the complaint that he had known the informant for two years, and that the informant previously had provided reliable information concerning narcotics activity, which had led to the recovery of illegal narcotics on three occasions. Pl. SOF ¶ 11; Def. Resp. ¶ 12. The first complaint resulted in Search Warrant 07SW4512 authorizing the search of the basement apartment of 1015 N. Laramie. Pl. SOF ¶ 9; Ex. 15 to Pl. SOF.

In the second complaint, Dailey requested a warrant to search the second floor apartment of 1015 N. Laramie for drugs and an individual with the nickname Guy. Def. Resp. ¶ 10; Ex. 15 to Pl. SOF (complaint). Dailey relied on information provided by the same confidential informant discussed in the first complaint. According to the second complaint, in their February 16, 2007 conversation, the informant told Dailey that he – the informant – had purchased crack from Guy from the second floor apartment at 1015 N. Laramie on several occasions over the prior three months, including on that day. Def. Resp. ¶¶ 23-25. The second complaint resulted

in Search Warrant 07SW4513 authorizing the search of the second floor apartment of 1015 N. Laramie. Pl. SOF ¶ 9; Ex. 15 to Pl. SOF.

Defendant Officer Marvin Bonnstetter also met with the informant on February 16, 2007, prior to the filing of the warrant applications. Pl. SOF ¶ 30. According to Bonnstetter, the informant told the officers that 1015 N. Laramie "was like a party house or something," and that there were no children in the building. Pl. SOF ¶¶ 32-33.

At approximately 6 p.m. on February 17, 2007 there was a team meeting regarding the execution of the 1015 N. Laramie search warrants. Pl. SOF ¶ 47. At that briefing, Dailey described what was expected to be found in the home. Pl. SOF ¶ 49. The fourteen Defendant Officers then proceeded to 1015 N. Laramie to execute the search warrants. Pl. SOF ¶ 56.

Officer Dailey entered the building first and went to the basement with approximately half of the other officers. Pl. SOF ¶ 57. The remaining officers went upstairs to the second floor apartment. Pl. SOF ¶ 57. The officers who went to the basement observed that it was unfinished and appeared to be used for storage and laundry. Reina Dep. at 29-30. Sergeant Salvatore Reina stated in his deposition that the basement was not what he expected based on the search warrant, as he understood that "there was supposed to be someone living downstairs." *Id.* at 30. Officer Dailey testified that the basement "didn't appear to be an apartment." Dailey Dep. 87. The officers did not observe any evidence of drugs in the basement. Pl. SOF ¶ 60.

The officers who went upstairs learned almost immediately upon entering the second floor apartment that it was occupied by Chicago police officer Markee Cooper, Sr. and his family, including two children – Zion and Markee, Jr. – and two grown women. Pl. SOF ¶¶ 62, 64-65; Def. SOAF ¶ 10. Upon learning that the second floor apartment belonged to a police

officer, Officer Napoli told the officers in the basement and first floor to stop the search, which they did. Pl. SOF ¶ 66.

Lieutenant Dennis Ross, who was the supervisor on the warrant execution, and Sergeant Reina informed Plaintiffs why they were there, and asked Markee and Shenita Cooper about Lawrence Tolliver. Pl. SOF ¶ 67; Def. SOAF ¶ 11. Officer Cooper responded that he did not know anyone by the name of Tolliver. Pl. SOF ¶ 68. According to Lieutenant Ross and Sergeant Reina, shortly thereafter, Shenita Cooper said that she recalled getting mail for a person by the name of Tolliver. Def. SOAF ¶ 13. At that point, Officer Cooper recalled that detectives previously had come to the apartment looking for a Lawrence Tolliver. Lieutenant Ross and Sergeant Reina testified that Officer Cooper said the detectives had stopped by about two months earlier. Def. SOAF ¶ 13. At his deposition, Officer Cooper stated that he told the officers that a detective looking for Lawrence Tolliver had come to the apartment six or seven months earlier. Cooper Dep. at 70. At some point, Officer Cooper showed Lieutenant Ross and Sergeant Reina the deed indicating that he owned the building located at 1015 N. Laramie. Pl. SOF ¶¶ 1, 70.

Following the discussion about Tolliver, Lieutenant Ross called in the canine unit to search the basement and second floor apartments for drugs. Pl. SOF ¶ 73. At the time that Ross called the canine unit, he and the other Defendant Officers knew that the targets of the search warrants – Tolliver and Guy – were not present. Pl. SOF ¶ 72. Lieutenant Ross testified that he nevertheless called the canine unit because Cooper had aroused his suspicion by initially denying knowing anyone named Tolliver, and then recalling that detectives had come to the apartment looking for a person named Tolliver. Ross Dep. 24. According to Ross, Cooper seemed to be changing his story in other ways as well. *Id.* The canine unit arrived approximately 45 minutes

5

later and conducted a sniff search of the second floor apartment and the basement. Def. SOAF ¶ 16; Pl. SOF ¶ 79; Ross Dep. at 25.

Sergeant Reina testified that, in light of Mrs. Cooper's statement "that she had received mail for a guy named Larry Tolliver," he did not conclude that "the information on the warrant was probably not valid," despite the inconsistencies between the informant's description and what they discovered. Reina Dep. at 39.

## II. Legal Standard on Summary Judgment

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

**III. Analysis**

In Count V, which is brought pursuant to Section 1983, Plaintiffs allege that the Defendant Officers' search of their home with the canine unit violated their Fourth Amendment right to be free from unreasonable searches and seizures. The Warrant Clause of the Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. AMEND. IV. A warrant that fails to describe the place to be searched with particularity is void. *Jacobs v. Chicago,* 215 F.3d 758, 767 (7th Cir. 2000). Consequently, "a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." *Massachusetts v. Sheppard,* 468 U.S. 981, 988 n.5 (1984). The Supreme Court has explained that the "manifest purpose of [the Warrant Clause's] particularity requirement" is to "ensure[] that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison,* 480 U.S. 79, 84 (1987).

Claims alleging violations of the Fourth Amendment's Warrant Clause can raise "two separate constitutional issues, one concerning the validity of the warrant and the other concerning the reasonableness of the manner in which it was executed." *Id.*; see also *Guzman v. City of Chicago*, 565 F.3d 393 (7th Cir. 2009) ("In evaluating an alleged violation of the Warrant Clause of the Fourth Amendment, we look at two distinct aspects of the warrant – its issuance and its execution"). Count III, which is not at issue in the motion currently before the Court,

7

challenges the validity of the warrants at the time that they were issued. Because the first issue is not before the Court at this time, the Court will assume for purposes of Plaintiffs' motion that the search warrants were valid when they were issued. Count V concerns the second issue – the reasonableness of the manner in which the warrants were executed. Plaintiffs argue that the Defendant Officers' conduct in executing the warrants violated their Fourth Amendment rights because, prior to calling in the canine unit, the Defendant Officers realized that the warrants did not describe Plaintiffs' building, and that they may have been executing the warrants on the wrong residence.

When officers discover ambiguity or a mistake in a search warrant that "put[s them] on notice of the risk that they might be in a [residence] erroneously included within the terms of the warrant," they are obligated to stop the search. *Garrison*, 480 U.S. at 87; see also *Jones v. Wilhelm*, 425 F.3d 455, 463 (7th Cir. 2005) (plaintiffs' Fourth Amendment rights were violated where officer "knew the warrant did not particularly describe the place to be searched * * *, but failed to immediately stop execution and seek the necessary clarification of a warrant"); *Simmons v. City of Paris*, 378 F.3d 476, 479-80 (5th Cir. 2004) ("when law enforcement officers are executing a search warrant and discover that they have entered the wrong residence, they should immediately terminate their search"). "[T]he [Supreme] Court has * * * recognized the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants." *Garrison*, 480 U.S. at 87. Therefore, police officers do not necessarily violate the Fourth Amendment when they mistakenly execute a search warrant on the wrong address. Rather, "the validity of the search * * * depends on whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable." *Garrison*, 480 U.S. at 88; see also *Brinegar v.*

*United States*, 338 U.S. 160, 176 (1949) (officers' "mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability").

Ambiguity in a search warrant often arises where the place to be searched contains multiple living units and the warrant fails to identify with precision which unit is to be searched. For example, in *Guzman*, the police obtained a warrant for a "single family residence." 565 F.3d at 395. When the police arrived at the location identified in the search warrant, it became evident that the building was not a single-family residence, but housed a real estate office, an apartment on the first floor, and a separate apartment on the second floor. *Id.* at 397-98. Despite the discrepancy between the warrant and what the officer discovered when he went to execute that warrant, the officer searched the second floor apartment. *Id.* at 395. The Seventh Circuit concluded that "[o]nce [the officer] knew that the house was not a single-family dwelling, he should have called off the search," and that his failure to do so violated the Fourth Amendment. *Id.* at 398.

Similarly, in *Jacobs*, police executing a warrant for a "single family residence" learned upon their arrival that the building in fact contained three apartments. 215 F.3d at 768. The officers nevertheless searched one of the apartments. *Id.* The Seventh Circuit held that the search violated the Fourth Amendment because it "occurred after * * * a reasonable officer would have discovered a fatal defect in the warrant." *Id.* at 269 ("the moment the Defendant Officers discovered the defect in the description of the place to be searched, they were obligated to cease that search if they could not determine which apartment was properly the subject of the warrant").

Here, Plaintiffs contend that, before the canine unit was called, the Defendant Officers should have realized that Plaintiffs' apartment might not be the intended subject of the warrants

9

because it did not match the description provided by the confidential informant. It is undisputed that, before the canine unit was called, the Defendant Officers had recognized a number of inconsistencies between the description provided by the confidential informant and both the basement and the second floor apartments at 1015 N. Laramie. Sergeant Reina and Officer Dailey admit that, shortly after arriving at the building, they realized that the basement was not a lived-in apartment as they had expected. With respect to the second floor apartment, the Defendant Officers observed that two children were present, contrary to the information that the informant provided. That the building was owned and occupied by a police officer also was contrary to the Defendant Officers' expectations. Furthermore, the Defendant Officers admit that prior to allowing the dogs to search they knew that the targets of the search – Guy and Tolliver – were not present.

However, contrary to Plaintiffs' contention, it is not undisputed that the Defendant Officers immediately realized that they had made a mistake. Sergeant Reina and Lieutenant Ross testified that they still believed that Plaintiffs' apartment might have some connection to Tolliver.[4] Viewing the evidence and all reasonable inferences in a light most favorable to

---

[4] If the trier of fact determines that, at some point, the Defendant Officers knew or reasonably should have known that a mistake had been made, then any searches or seizures that occurred after that point violated Plaintiffs' Fourth Amendment rights. Absent exigent circumstances, the determination of whether probable cause exists for purposes of the Fourth Amendment must be made by a magistrate. See *Chambers v. Maroney,* 399 U.S. 42, 51 (1970). Officers generally are not permitted to apply their own observations and "subsequent deductions to resolve [a] warrant's ambiguity"; "rather [they must] present[] those observations to a magistrate for determination." *Jones,* 425 F.3d at 463-65 (finding Fourth Amendment violation where officer realized that warrant was ambiguous and "circumvented the proper procedural safeguards [by] act[ing] as his own magistrate * * * [and] applying knowledge he had gained * * * to resolve the warrant's ambiguity"); *United States v. Marin-Buitrago,* 734 F.2d 889, 894 (2d Cir. 1984) ("when a definite and material change has occurred in the facts underlying the magistrate's determination of probable cause, it is the magistrate, not the executing officers, who must determine whether probable cause exists"). Consequently, here, if the Defendant Officers knew or should have known that the warrants involved a mistake, they were not permitted to decide – based on Cooper's supposedly inconsistent statements or any of their other observations – that probable cause existed, and to conduct a search on the basis of that determination. Rather, in that case, the Defendant Officers should have suspended the search and presented their observations to a magistrate. The upshot of the foregoing

Defendants – as the Court must at this stage of the litigation – the Court finds that there is a genuine question of material fact as to whether the Defendant Officers reasonably should have known that there was a mistake (*i.e.*, that the Plaintiffs' building was not the premises described in the warrants), and should have retreated. A number courts of appeals have concluded in analogous cases that the reasonableness of police officers' failure to realize that they were at a residence not anticipated in a search warrant is a question for the trier of fact. See *Harman v. Pollock*, 446 F.3d 1069, 1085 (10th Cir. 2006) (finding "material facts in dispute as to the reasonableness of the officers' delay in realizing that [garage was] a separate residence not anticipated in the warrant," where "officers had ample notice that the garage may have been a separate residence" and "[n]either plaintiff resembled any target described in the warrant or the underlying affidavit"); *Pray v. City of Sandusky*, 49 F.3d 1154, 1160 (6th Cir. 1995) ("[i]t is for the trier of fact to determine, based on the credibility of the evidence before it, at what point the officers knew or reasonably should have known they were at the wrong residence"); *Dawkins v. Graham*, 50 F.3d 532 (8th Cir. 1995) (where "objective facts available to the officers at the time of the raid distinguished [plaintiffs' residence] from the premises" that was the proper subject of the search warrant, reasonableness of officers' mistaken execution of warrant on wrong premises involved questions of fact precluding summary judgment); *Liston v. County of Riverside,* 120 F.3d 965, 977 (9th Cir. 1997) (finding "'triable issues' regarding the reasonableness of the detention, particularly as to whether it continued after the officers knew or a reasonable officer would have known that a serious mistake had been made").

---

analysis is that any search or seizure that occurred in this case will be found to have been lawful only if the trier of fact finds that the Defendant Officers reasonably believed that the warrants properly described Plaintiffs' residence.

Defendants note that courts, including the Seventh Circuit, have concluded that "a canine sniff test that is used to detect the presence of contraband is not a fourth amendment search." *United States v. Vasquez*, 909 F.2d 235, 238 (7th Cir. 1990) (canine sniff of private garage from public alley was not a warrantless search); see also *United States v. Brock*, 417 F.3d 692, 696-97 (7th Cir. 2005) (canine sniff outside plaintiff's locked bedroom door did not constitute Fourth Amendment search); *Peals v. Terre Haute Police Dept.*, 535 F.3d 621, 628-29 (7th Cir. 2008) (presence of canine units did not make search of plaintiff's garage unreasonable). In reaching that conclusion, courts have relied on the fact that the police had the authority to be present at the location where the sniff took place. See *Brock*, 417 F.3d at 697 ("Critical to our holding that the dog sniff in this case was not a Fourth Amendment search is the fact that police were lawfully present inside the common areas of the residence"); *United States v. Reed*, 141 F.3d 644, 650 (6th Cir. 1998) (holding that "a canine sniff is not a search within the meaning of the Fourth Amendment," and noting that "[o]f course, the canine team must lawfully be present at the location where the sniff occurs"). Here, the threshold question of whether the Defendant Officers lawfully were in Plaintiffs' home at the time of the canine sniff search (or whether they reasonably should have recognized a defect in the warrants and retreated) remains open. Therefore, resolution of whether the canine sniff test was a Fourth Amendment search is premature at this time.

In their response brief, Defendants also address Plaintiffs' claim that they were illegally seized for the 75 minute period during which the Defendant Officers remained at their residence. That claim is set forth in Count IV of the amended complaint, and therefore is not properly before the Court on Plaintiff's motion for partial summary judgment as to Count V. Accordingly, the Court will not address the reasonableness of the alleged seizure at this time.

## IV.     Conclusion

For the foregoing reasons, Plaintiffs' motion for partial summary judgment on Count V [101] is denied.

Dated: March 31, 2010

Robert M. Dow, Jr.
United States District Judge