**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MARKEE COOPER, SR., ZION COOPER and, MARKEE COOPER, JR., by and through their Parents and guardians MARKEE COOPER, SR. and SHENITA COOPER, ) ) ) ) ) ) Plaintiffs, ) ) v. ) ) Chicago Police Officers S. DAILEY, No. 10890, ) M. BONNSTETTER, No. 15963, F. MACK, No. ) 198404, J. FRANO, No. 11772, R. PUCILLO, ) No. 16850, W. JOHNSON, No. 17442, ) A. MONACO, No. 19253, S. LAURETTO, ) No. 5882, V. FICO, No. 6284, L. WILLEMS, ) No. 7394, M. NAPOLI, No. 9560, S. REINA, ) No. 2622, D. ROSS, No. 177, G. DE SALVO, ) No. 218, and The CITY OF CHICAGO, ) ) Defendants. ) | Case No. 07-cv-2144<br><br>Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

Markee Cooper, Sr., individually and on behalf of his minor sons Zion and Markee, Jr., filed a first amended complaint [56] asserting claims under Illinois state law and 42 U.S.C. § 1983 against the City of Chicago and fourteen individual Chicago police officers (the "Defendant Officers"). All of Plaintiffs' claims arise out of the February 17, 2007 search of their home by the Defendant Officers, which was conducted pursuant to two search warrants issued based on information that Defendants contend was provided by a confidential informant.

Currently before the Court is Plaintiffs' motion for summary judgment against the City of Chicago as to liability on Counts III, IV, and V. [110]. Counts III, IV, and V all allege violations of Plaintiffs' Fourth Amendment rights to be free from unreasonable searches and

seizures. Count III alleges that the search warrants which led to the initial search and detention of the Plaintiffs were invalid when issued, because they were based on false information provided by Defendant Officer Dailey. Counts IV and V allege that even if the Defendant Officers had probable cause to initially detain Plaintiffs and search their home, the subsequent search by the canine unit and the attendant detention were unlawful because they occurred after probable cause had dissipated.[1] Plaintiffs seek to impose liability on the City under *Monell v. Dep't. of Social Servs. of City of New York*, 436 U.S. 658 (1978) and its progeny, alleging that the City's policies, practices, and customs pertaining to the registration and use of confidential informants caused these violations. For the reasons stated below, Plaintiffs' motion is respectfully denied.

I.  **Background**

The Court takes the relevant facts primarily from the parties' Local Rule ("L.R.") 56.1 statements:[2] Plaintiffs' statement of facts ("Pl. SOF") [111][3], the City's response to Plaintiffs'

---

[1] Count V is erroneously identified as Count VI in Plaintiffs' first amended complaint.

[2] L.R. 56.1 requires that statements of facts contain allegations of material fact and that factual allegations be supported by admissible record evidence. See L.R. 56.1; *Malec v. Sanford,* 191 F.R.D. 581, 583-85 (N.D. Ill. 2000). The Seventh Circuit repeatedly has confirmed that a district court has broad discretion to require strict compliance with L.R. 56.1. See*, e.g., Koszola v. Bd. of Educ. of the City of Chicago,* 385 F.3d 1104, 1109 (7th Cir. 2004); *Curran v. Kwon,* 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311, 1317 (7th Cir. 1995) (collecting cases)). Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider that statement. See*, e.g., Malec,* 191 F.R.D. at 583. Additionally, where a party improperly denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems that statement of fact to be admitted. See L.R. 56.1(a), 56.1(b)(3)(B); see also *Malec,* 191 F.R.D. at 584. The requirements for a response under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000). In addition, the Court disregards any additional statements of fact contained in a party's response brief but not in its L.R. 56.1(b)(3)(B) statement of additional facts. See, *e.g.*, *Malec*, 191 F.R.D. at 584 (citing *Midwest Imports*, 71 F.3d at 1317). Similarly, the Court disregards a denial that, although supported by admissible record evidence, does more than negate its opponent's fact statement—that is, it is improper for a party to smuggle new facts into its response to a party's L.R. 56.1 statement of fact. See, *e.g.*, *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643 (7th

statement of facts ("City Resp.") [121], the City's Statement of Additional Facts ("City SOAF") [122], and Plaintiffs' Response to the City's Statement of Additional Facts (Pl. Resp.) [133]. In its Order of March 31, 2010, the Court denied Plaintiffs' motion for partial summary judgment as to liability on Count V, finding that whether the Defendant Officers reasonably should have known that there was a mistake in the warrants (and therefore should have immediately called off their search) was a genuine question of material fact for the trier of fact. [Dkt. 142]. In the March 31 Order, the Court provided background relevant to the events of February 16 and 17, 2007, which it will not repeat here.

### A. Chicago Police Department's Policies Regarding Confidential Informants

The Chicago Police Department allows its officers to use information provided by confidential informants ("CIs") to obtain search warrants and for other purposes. At the time of the allegedly illegal search of Plaintiffs' home,[4] Department Special Order ("D.S.O.") § 01-07 governed preparation, review, and approval of complaints for search warrants and search warrants. Pl. Resp. ¶ 10. Under D.S.O. § 01-07, an officer preparing a complaint for a search warrant and the warrant itself must ensure that both accurately and specifically describe the person or premises to be searched and the articles to be seized. D.S.O. § 01-07(V-A). The officer preparing a search warrant must then present the search warrant application to "the unit commanding officer/watch commander" who must review it "in light of statutory and

---

Cir. 2008). Additional facts, if necessary to the Court's analysis, may be provided in other portions of this memorandum opinion and order.

[3] The Plaintiffs also filed an additional statement of facts in support of their motion, at Dkt. 117. This appears to be a duplicate of Dkt. 111. The Court has considered both filings.

[4] As explained below, the City's official policy on using information provided by confidential informants to obtain search warrants changed in June 2007. Unless specified otherwise, the facts in this section refer to the Chicago Police Department's policies as they existed in February 2007, when the allegedly-illegal search occurred.

constitutional requirements." Pl. Resp. ¶ 11; D.S.O. § 01-07 (V-B). The commanding officer/watch commander must determine that the facts alleged in the complaint are credible and reliable, that the facts were properly obtained, that the investigation leading up to the need for the search warrant was thorough, that the targets for search are specifically and accurately described, that the technical aspects of the complaint are correct (e.g. dates, times, spelling), and that probable cause for the issuance of the search warrant is stated in the complaint. § 01-07 (V-B.2). The commanding officer/watch commander must interview the officer requesting the search warrant if verification or clarification is needed. Pl. Resp. ¶ 11; D.S.O. § 01-07 (V-B). In addition to his or her customary review of the warrant application, if the search warrant application "is based upon information received from a confidential informant and not from a named citizen," the unit commanding officer/watch commander must review "documented evidence which must either substantiate the claim of prior use of the particular informant or clearly indicate that an investigation undertaken as a result of the information received validates an assertion of probable cause." *Id*.

After the commanding officer/watch commander indicates his or her approval of the application, the officer seeking the search warrant must then obtain approval from a Cook County Assistant State's Attorney. Pl. Resp. ¶ 12; D.S.O. § 01-07 (VI.A). Finally, a judge must approve and sign the warrant application. Pl. Resp. ¶ 12; D.S.O. § 01-07 (VI-C-D).

While D.S.O. § 01-07 mentions the use of CIs in obtaining warrants, it does not discuss how records and files on CIs are to be kept. At the time of the incident, the Chicago Police Department's Organized Crime Division ("OCD") maintained confidential files on certain CIs who worked with OCD officers. The files contained, among other things, identifying information on each informant such as the informant's age, alien or non-alien status, and

4

criminal history. City Resp. ¶¶ 56, 57, 60. OCD officers were required to register a CI in the OCD's files in order for that CI to become eligible to be paid for his services out of "15-05" funds or be given letters of consideration to present to prosecutors in connection with pending criminal charges. Pl. Resp. ¶¶ 17, 18. If the CI had not tried to receive benefits, OCD officers "could register them, but they are not required to." Pl. Resp. ¶ 18.

While officers outside the OCD were allowed to use CIs, they were not allowed to register their CIs in the OCD registry. City Resp. ¶¶ 15, 16. The Chicago Police Department, at the time, did not impose any particular record-keeping requirements on officers outside the OCD who used confidential informants. City Resp. ¶¶ 18, 43, 49. Similarly, officers were not required to verify the identity or background of CIs before using them. City Resp. ¶ 17. Further, the Chicago Police Department did not then require officers to bring CIs before a judge when obtaining search warrants based on information provided by those CIs. City Resp. ¶ 19.

In June 2007, the Chicago Police Department propounded D.S.O. § 07-06, which superseded D.S.O. § 01-07. Pl. Resp. ¶ 14. The new policy, among other things, specifies procedures for search warrants premised on information obtained from "John Doe" individuals (individuals who wish to remain anonymous but who are not regular informants), "unregistered cooperating individuals" (confidential informants who have given "repeated, documented, and verified" information in the past but who have not been compensated for their information and who are not registered in the OCD system") and "registered cooperating individuals" (informants who are registered with the OCD). § 07-06 (IV). Under the new policy, officers must maintain a file for each unregistered cooperating individual to document the identity, reliability, and credibility of the informant. *Id*. The file is to include all police reports, lab reports, and search warrants related to information provided by that informant, going back two years. *Id*. Under the

new policy, John Doe individuals must be presented to the judge approving the search warrant. *Id.* The new policy, like D.S.O. § 01-07, requires all search warrant applications to be reviewed by the unit commanding officer/watch commander and by a Cook County Assistant State's Attorney. *Id.* The Police Department's Research and Development Division began work on drafting D.S.O. § 07-06 sometime in 2006, prior to the incident at issue in this case. Pl. Resp. ¶ 15.

## B. Defendant Officer Dailey's Use of Confidential Informant "Lamar"

As discussed in this Court's Order of March 31, 2010, Defendant Officer Dailey swore out two complaints for warrants to search Plaintiffs' residence largely on the basis of information provided by "Lamar," a confidential informant. The Plaintiffs' theory is that Lamar does not exist; accordingly Plaintiffs contend that the information included by Dailey in the complaints for search warrants was entirely fabricated.

Officer Dailey, on the other hand, testified that he first met Lamar in 2005. City Resp. ¶ 142. Dailey testified that he had used information from Lamar on three prior occasions, with each occasion leading to arrests for guns or drugs. Pl. Resp. ¶¶ 20-22. Prior to the incident in issue, Lamar "never" gave Dailey information that did not lead to an arrest or the recovery of a gun. Pl. Resp. ¶ 23. Defendant Officer Bonnstetter testified that he met Lamar on approximately ten separate occasions. City Resp. ¶ 154. Bonnstetter participated in one arrest based on information that came from Lamar. Pl. Resp. ¶ 24.

Dailey did not bring Lamar before Judge Ford when he was seeking the search warrants at issue; in fact Dailey has never brought a CI before a judge. City Resp. ¶ 89. Dailey does not remember if Judge Ford asked him anything about the search warrant when he met with Judge Ford to obtain his signature on the warrant. City Resp. ¶ 150.

6

Officer Dailey did not register Lamar as a confidential informant in the OCD database. City Resp. ¶ 85. Dailey did not maintain a file on Lamar, City Resp. ¶ 11, or on other CIs. City Resp. ¶ 159. The Defendants have no picture of Lamar, City Resp. ¶ 9, and do not know Lamar's date of birth or social security number. City Resp. ¶ 8. Dailey never knew what Lamar's criminal background was. City Resp. ¶ 153. When asked, Dailey was unable to provide an address for Lamar, but could identify "the name of two streets on the west side" where he had met with Lamar on previous occasions. City Resp. ¶ 3. Dailey has not spoken with Lamar following a telephone conversation that allegedly occurred on February 18, 2007, nor has Dailey seen Lamar on the street despite looking for him. City Resp. ¶ 151.

While being investigated by IAD subsequent to the search, Officer Dailey was unable to provide any identifying information regarding Lamar. City Resp. ¶ 160. According to Officer Jennifer Detwyler, the IAD agent assigned to investigate Officer Cooper's complaint about the search of his home, Officer Dailey did not present any information that would have satisfied her that "Lamar" actually existed. City Resp. ¶ 161.

## II. Legal Standard on Summary Judgment

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

### III. Analysis

There is no vicarious liability under *respondeat superior* against a government entity for the acts of its employees. *Collins v. City of Harker Heights, Texas,* 503 U.S. 115, 120 (1992). Congress did not intend a municipality to be liable unless the action complained of was done pursuant to official municipal policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy. *Monell v. New York City Department of Social Services,* 436 U.S. 665, 694 (1978); see also *Collins*, 503 U.S. at 120-121, *Pembaur v. City of Cincinnati,* 475 U.S. 469, 477 (1986); *City of Canton v. Harris,* 489 U.S. 378 (1989); *Bd. of Cty. Comm. of Bryan Cty., OK v. Brown.,* 520 U.S. 397 (1997). "Misbehaving employees are responsible for their own conduct[;] 'units of local government are responsible only for their policies rather than misconduct by their workers.'" *Lewis v. City of Chicago,* 496 F.3d 645, 656 (7th Cir. 2007) (quoting *Fairley v. Fermaint,* 482 F.3d 897, 904 (7th Cir.2007)).

A plaintiff can establish a municipal policy in one of three ways, either by "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Roach v. City of Evansville*, 111 F.3d 544, 548 (7th Cir. 1997). Consequently, to establish liability against the City of Chicago, a Plaintiff must prove that: "(1) he suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority for the City; which (3) was the proximate cause of his injury." *Ienco v. City of Chicago*, 286 F.3d 994, 998 (7th Cir. 2002).

Put another way, that a constitutional injury was caused by a municipality may be shown directly by demonstrating that the policy itself is unconstitutional. *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 530-31 (7th Cir. 2000) (citing *Monell*, 436 U.S. at 694-95, and holding that a municipality may be liable under § 1983 for a policy that requires pregnant women to take unpaid leave before leave was required for medical reasons because the policy itself is unconstitutional). Municipal liability also may be demonstrated indirectly "by showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned, thus in either event adopting, the misconduct of subordinate officers." *Id*. (quoting *Jackson v. Marion County,* 66 F.3d 151, 152 (7th Cir. 1995)).

Plaintiffs argue that there are two ways in which the City's policies or customs caused their constitutional deprivations: (1) that the City's policies led to the issuance of search warrants based on information allegedly provided by nonexistent informants, and (2) through the City's

"deliberate indifference" to Defendants' "custom and practice of creating fictitious informants."[5] Plaintiffs do not argue that the City's policies regarding confidential informants were themselves unconstitutional nor do they argue that their injuries were caused by acts of a decision-maker with final policy-making authority for the City.

### A. City's Policies on Confidential Informants and their Effect on Judges

Plaintiffs argue that the City of Chicago had an express policy that "only allowed officers in the Organized Crime Division ("OCD") to register confidential informants" while not requiring "officers outside of OCD to keep any files" on the unregistered informants. Mem. at 22.[6]

Plaintiffs' first attempt to link these "express policies" to their constitutional harms proceeds as follows: Each time that a non-OCD officer used the phrase "confidential informant" in an application for a search warrant, judges were "misled" "as to the totality of the circumstances regarding the probable cause analysis," which resulted in the issuance of search warrants predicated on information obtained from nonexistent CIs. Why were judges "misled?"

---

[5] The Plaintiffs also identify a third way in which the City's policies regarding confidential informants may cause constitutional violations, in a generalized sense. According to Plaintiffs, the City's "express policy that actually prevents its officers from registering confidential informants" results in "regular *Roviaro* violations, and the consequential denial of fair trials to criminal defendants" unable to obtain information about CIs who played a role in their arrest. Mem. at 25-28. In short, Plaintiffs surmise that the City's policy in 2007 of not requiring non-OCD officers to register and maintain records about CIs deprived numerous criminal defendants of the ability to present a full defense at trial. The Plaintiffs (who were not prosecuted and are not facing prosecution arising out of the search that is challenged in this case) clearly have no standing to make such an argument. See, *e.g. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (Article III requires that the plaintiff has suffered an "injury in fact" which is fairly traceable to the challenged action of the defendant and "likely," as opposed to merely "speculative," to be "redressed by a favorable decision.").

[6] Plaintiffs also argue that the City had a "written policy that encouraged officers outside of Organized Crime to use confidential informants." Mem. at 22. But Plaintiffs cite no evidence to support this statement; accordingly the Court will not consider it. *Malec,* 191 F.R.D. at 583. Additionally, the Court, on its own initiative, has reviewed the written CPD policies provided in the record and finds no support for this statement. Further, Plaintiffs abandon all discussion of this purported "express policy" in their reply brief.

According to Plaintiffs, the term "confidential informant" (as opposed to "anonymous source" or "John Doe") "implies to the judge a greater level of credibility than actually exists if the affiant is relying on an unregistered informant whose identification has not been determined or verified." *Id*. at 23. In this case, Plaintiffs believe that the phrase "confidential informant" in the application contained the "clear implication * * * that Lamar was a regular informant, and that Dailey must therefore had done the basic police work of verifying [and presumably documenting] Lamar's identification," when he in fact had not. *Id.* at 25. In essence, Plaintiffs surmise that when Judge Ford saw the phrase "confidential informant" he must have assumed that Officer Dailey had "registered" Lamar as a CI and/or maintained a detailed file on him. Because the warrant applications in this case were "implicit[ly] falsif[ied]," Judge Ford was duped into signing off on the search warrants which then resulted in the illegal search of Plaintiffs' home.

In order to succeed on a *Monell* claim, a plaintiff must prove that there is a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation" and that the city's policies are the "moving force" behind the constitutional violation. *City of Canton,* 489 U.S. at 385-389; *Bd. of County Com'rs of Bryan County,* 520 U.S. at 405 ("Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."); see also *Leahy v. Board of Trustees,* 912 F.2d 917, 922 (7th Cir. 1990) ("Proximate causation between the municipality's policy or custom and the plaintiff's injury must be present."). An isolated incident by the police does not establish an official municipal policy. *Oklahoma City v. Tuttle,* 471 U.S. 808, 824 (1985).

Here, Plaintiffs fail to offer any evidence showing how these alleged City policies (rather than one "misbehaving employee") caused a false search warrant to be issued. There is no evidence in the summary judgment record, nor is it apparent to the Court, that the phrase "confidential informant" actually carries the connotation that Plaintiffs posit. Similarly, it is entirely plausible that Cook County Circuit Court judges in February 2007 were well aware of the City's policies regarding registration of and recordkeeping on confidential informants. Plaintiffs present no evidence that Cook County Judges regularly approve search warrants in reliance on the abbreviation "C/I," instead of on the facts stated in the warrant applications about the CI's previous reliability. Plaintiffs do not even present evidence that Judge Ford relied on the phrase "confidential informant" rather than the information about Lamar's previous reliability in the application for search warrant. In short, on the record evidence adduced on this point by Plaintiffs in support of their summary judgment motion, Plaintiffs' assertion that the City's policies cause judges to be misled when reviewing applications for search warrants is too speculative to warrant summary judgment in Plaintiffs' favor.

B. The City's "Deliberate Indifference" Towards the Area 5 Gun Team

The Plaintiffs also argue that the "individual Defendants have had a custom and practice of creating fictitious informants, falsifying warrants, and then wrongfully arresting and prosecuting whoever happens to be at the home that they search" and that the City has been "deliberately indifferent" to this pattern of conduct. *Mem.* at 28.[7]

To establish municipal "custom" for § 1983 purposes, the plaintiff must show "a widespread practice that, although not authorized by written law or express municipal policy, is

---

[7] The Plaintiffs offer no evidence or argument connecting the theories of *Monell* liability articulated above as to Counts IV and V, which do not involve the validity of the warrants when issued but rather the Defendant Officers' alleged failure to call off the search once they became aware of discrepancies between the warrants and Plaintiffs' residence. Because such an argument would be a complete *non-sequitur*, the Court assumes that Plaintiffs intended these theories to apply only to Count III.

so permanent and well settled as to constitute a custom or usage with the force of law." *Gable v. City of Chicago,* 296 F.3d 531, 537 (7th Cir. 2002). Because a municipality is only liable for deliberate conduct, the plaintiffs must also show that City policymakers were "deliberate[ly] indifferen[t] as to [the custom's] known or obvious consequences." *Brown,* 520 U.S. at 407 (quotation marks omitted). "Deliberate indifference" is a "stringent standard of fault." *Id.* at 410 *see also Frake v. City of Chicago,* 210 F.3d 779, 782 (7th Cir. 2000) (stating that a finding of deliberate indifference requires a showing that policymakers "were aware of a substantial risk" of a constitutional violation and "failed to take appropriate steps to protect [plaintiffs] from a known danger").

Plaintiffs concede that the only evidence put forward to establish the City's widespread "custom and practice" relates to Defendant Officer Dailey. *Mem.* at 28-29. Evidence regarding one police officer is too sparse to establish "a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law." See *Montano v. City of Chicago*, 535 F.3d 558, 570-71 (7th Cir. 2008). In any event, the evidence that Plaintiffs do present with regard to Dailey does *not* conclusively establish that even he had a custom of creating fictitious confidential informants. The 20 search warrant complaints submitted by Plaintiffs show only that Defendant Officer Dailey used confidential informants on a regular basis (albeit with varying levels of success)—not that he customarily submitted search warrants premised on information from fictitious CIs. See Pl. SOF, Ex. 12, see also Ex. 32.

Finally, it is not at all undisputed that the City was deliberately indifferent to the risks and challenges presented by the use of confidential informants. As to this point, Plaintiffs do not contest that at the time of the allegedly-illegal search of their home, the City was in the process

of drafting D.S.O. § 07-06—which specifically addressed recordkeeping for and use of unregistered confidential informants.[8]

## IV. Conclusion

For the foregoing reasons, Plaintiffs' motion for summary judgment as to liability on *Monell* policy claim [110] is respectfully denied.[9]

Dated: September 23, 2010

_____
Robert M. Dow, Jr.
United States District Judge

---

[8] In a related, undeveloped argument, the Plaintiffs also suggest that the City's policies which allow non-OCD officers to use CIs but do not allow them to register the CIs in the OCD database or require them to keep CI files in essence created an environment in which Officer Dailey could more easily submit an application for search warrant premised on a nonexistent informant. *Mem.* at 3, 25. In response to this argument, the City argues that if Plaintiffs' theory is correct—that Dailey invented "Lamar" out of whole cloth—Plaintiffs offer no evidence to explain how recordkeeping and requirements and access to the OCD registry would have prevented such misconduct. That is, if Dailey was willing to falsify a sworn application for search warrant, surely he would have had no qualms about falsifying his records about the CI. Plaintiffs abandon discussion of this theory of liability in their reply brief. In any event, it is not enough to show that a municipal policy "might lead" to police misconduct. *See City of Oklahoma City v. Tuttle,* 471 U.S. at 808, 823 n. 8 (1985). Rather, the plaintiff must show an affirmative link between the policy and the particular constitutional violation alleged. See *id.* "But for" causation is required. See *Estate of Novack,* 226 F.3d at 532; *Woodward v. Correctional Medical Servs. of Ill., Inc.,* 368 F.3d 917, 928 (7th Cir. 2004). The evidence presented by Plaintiffs does not now establish that the City's lack of recordkeeping and registration requirements for certain groups of officers was the cause in fact (let alone the proximate cause) of their injuries.

[9] In their Response brief, the City asks the Court to either dismiss Plaintiffs' *Monell* claims under Federal Rule of Civil Procedure 12(b)(6). Having already filed an answer in this action, the City cannot now move for dismissal under Rule 12(b)(6). See, *e.g. Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 470 n. 2 (7th Cir. 1997). Furthermore, the Court reminds the City that it may not move for dismissal in a response brief. The City's pre-trial options at this point appear to be filing a motion under Rule 12(c) or Rule 56.

14