**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARKEE COOPER, SR., ZION COOPER and,<br>MARKEE COOPER, JR., by and through their<br>Parents and guardians MARKEE COOPER, SR.<br>and SHENITA COOPER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 07-cv-2144 |
| | ) | |
| Chicago Police Officers S. DAILEY, No. 10890, | ) | |
| M. BONNSTETTER, No. 15963, F. MACK, No. | ) | Judge Robert M. Dow, Jr. |
| 198404, J. FRANO, No. 11772, R. PUCILLO, | ) | |
| No. 16850, W. JOHNSON, No. 17442, | ) | |
| A. MONACO, No. 19253, S. LAURETTO, | ) | |
| No. 5882, V. FICO, No. 6284, L. WILLEMS, | ) | |
| No. 7394, M. NAPOLI, No. 9560, S. REINA, | ) | |
| No. 2622, D. ROSS, No. 177, G. DE SALVO, | ) | |
| No. 218, and The CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Markee Cooper, Sr., individually and on behalf of his minor sons Zion and Markee, Jr., filed a first amended complaint [56] asserting claims under Illinois state law and 42 U.S.C. § 1983 against the City of Chicago and fourteen individual Chicago police officers (the "Defendant Officers"). All of Plaintiffs' claims arise out of the February 17, 2007 search of their home by the Defendant Officers, which was conducted pursuant to two search warrants issued based on information that Defendants contend was provided by a confidential informant.

Currently before the Court is Defendants' motion for summary judgment [173] as to Counts I, II, III, IV, VI,[1] VII and VIII of the Plaintiffs' first amended complaint. Counts I and II allege that Defendants' assaulted Markee Cooper's sons, Markee Cooper Jr. and Zion Cooper, by employing a canine to conduct the search of the apartment. Counts III, IV, and VI all allege violations of Plaintiffs' Fourth Amendment rights to be free from unreasonable searches and seizures.[2]  Court VII alleges that Defendants' caused intentional infliction of emotional distress through the execution of the search warrant.  Count VIII alleges that Defendants conspired to deprive Plaintiffs of their constitutional rights by concocting probable cause for the search warrants that led to violations of their Fourth Amendment rights.  Individual Defendants alternatively argue for summary judgment on the basis of the doctrine of qualified immunity.  For the reasons stated below, Defendants' motion for summary judgment [173] is denied with respect to Counts III, IV, VI, VIII and the issue of qualified immunity, and granted with respect to Counts I, II and VII.  In addition, Defendants' motion to deem admitted and strike Plaintiffs' Local Rule 56.1 statement of additional facts in part [201] is denied, and Plaintiffs' motion to supplement their Local Rule 56.1 statement of additional facts [211] is denied without prejudice as moot.

---

[1] Count V is erroneously identified as Count VI in the Plaintiffs' First Amended Complaint. In the Court's previous opinions, Count VI was listed as Count V, but to avoid confusion it will be referred to as Count VI in this opinion.

[2] More specifically, Count III alleges that the search warrants that led to the initial search and detention of the Plaintiffs were invalid when issued because they were based on false information provided by Defendant Officer Dailey.  Counts IV and VI allege that even if the Defendant Officers had probable cause to initially detain Plaintiffs and search their home, the subsequent search by the canine unit and the attendant detention were unlawful because they occurred after probable cause had dissipated.

# I.    Background[3]

This is the third motion for summary judgment before the Court in this case. In its Order of March 31, 2010, the Court denied Plaintiffs' motion for partial summary judgment as to liability on Count VI, finding that whether the Defendant Officers reasonably should have known that there was a mistake in the warrants (and therefore should have immediately called off their search) presented a genuine issue of material fact for trial. [142]. In its Order of September 23, 2010, the Court denied Plaintiffs' motion for partial summary judgment as to liability on Counts III, IV, and IV, finding that Plaintiffs' assertions that the City's policies cause judges to be misled was too speculative, and that evidence regarding one police officer, Defendant Officer Dailey, was too sparse to establish a widespread practice of misconduct under *Monell v. Dep't. of Social Servs. of City of New York*, 436 U.S. 658 (1978) and its progeny [161].

In the March 31 and September 23 Orders, the Court provided a more complete background relevant to the events of February 17, 2007, which it will not repeat in full here. For the purposes of this motion, the Court notes that the parties agree that in the early hours of February 16, 2007, Defendant Officer Sean Dailey swore out two complaints for warrants to search 1015 N. Laramie. In the first complaint, Dailey requested a warrant to search the basement apartment of 1015 N. Laramie for drugs and an individual named Lawrence Tolliver. Dailey stated in the complaint that a confidential informant told Dailey that he (the informant) had purchased "rocks" (crack cocaine) from an individual known as Lawrence Tolliver on several occasions from the

---

[3] The Court takes the relevant facts primarily from the parties' Local Rule ("L.R.") 56.1 statements: Defendants' statement of facts ("Def. SOF")[174], the Plaintiffs' response to The City's statement of facts ("Pl. Resp.") [189], the Plaintiffs' Statement of Additional Facts ("Pl SOAF") [190], and Defendants' Response to the Plaintiffs' Statement of Additional Facts (Def. Resp.) [203].

basement apartment at 1015 N. Laramie.  The first complaint resulted in Search Warrant 07SW4512, authorizing the search of the basement apartment of 1015 N. Laramie.

In the second complaint, Dailey request a warrant to search the second floor apartment of 1015 N. Laramie for drugs and an individual with the nickname Guy. Dailey reported that he relied on the information provided by the same confidential informant whose information supported the first complaint.  The second complaint resulted in Search Warrant 07SW4513 authorizing the search of the second floor apartment of 1015 N. Laramie.  Defendant Officers Dailey and Bonnstetter testified that the information in the search warrants came from their confidential informant, Lamar.  Dailey and Bonnstetter were the only Defendants who claim to have interacted with Lamar.  Dailey also testified that Lamar had helped him with past arrests.  Plaintiffs submit that Lamar does not exist and further contend that Defendants have not come forward with any evidence to corroborate the testimony of Officers Dailey and Bonnstetter that Lamar does exist.  Plaintiffs also assert that the Defendant Dailey lied about printing Lawrence Tolliver's photo off of the CLEAR system and failed to run any additional checks before executing the search warrant, which would have alerted Defendants to their impending mistake.

Sometime after 5:00 p.m. on February 16, 2007, Judge Nicholas Ford issued the two search warrants that Officer Dailey requested.  Shortly thereafter, Officer Dailey met with his team and gave out assignments to team members. Around 7:00 p.m., Defendants executed the search warrants, simultaneously entering both the basement and second floor apartments of 1015 N. Laramie.  The officers who went to the basement observed that it was unfinished and unoccupied and appeared to be used only for storage and

laundry—in short, it was not the basement apartment that the team had expected to find. When the team entered the second floor apartment, they found Markee Cooper—who identified himself as a Chicago Police Officer— his wife, two children, and another woman—not the "party house" that they expected to find based on the information in the warrant. Upon learning that the second floor apartment belonged to a police officer, Defendant Officer Napoli told the officers in the basement to stop the search, which they did.

The parties disagree about the conversation that ensued, including whether the Coopers had ever heard of Lawrence Tolliver or received any mail addressed to him. The parties do not disagree, however, that following the disputed discussion, Defendant Lieutenant Ross called in a canine unit to search the basement and second floor apartment for drugs. At that point, Markee Cooper called his supervisor, who instructed him to cooperate with the search. The canine unit arrived shortly thereafter and conducted a sniff search of the second floor apartment and basement. The presence of the dog startled Markee's children, even though Markee had told them that the dogs were coming. The dog was leashed and present for approximately ten to fifteen minutes. The parties dispute whether the dog was muzzled and whether it barked or merely made ordinary dog sounds. The dog did not attack any of the plaintiffs.

## II.    Legal Standard on Summary Judgment

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to

the nonmoving party." *Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

## III. Analysis

### A. Counts III, IV, VI, and VIII

In *Maryland v. Garrison,* the Supreme Court explained that in claims alleging violations of the Fourth Amendment's Warrant Clause, "two separate constitutional issues, one concerning the validity of the warrant and the other concerning the reasonableness of the matter in which it was executed" can arise. 480 U.S. 79, 84 (1987).

The Defendants argue that there are no material fact disputes with regard to the validity or execution of the warrant and thus they are entitled to summary judgment on Counts III, IV, VI and VIII. In this case, however, there are numerous material fact disputes as to both issues identified in *Maryland*.

At this time, the Court need only note a few of the most obvious disputes that prohibit summary judgment. First, Plaintiffs argue that the confidential informant Lamar did not exist. While Defendants Officers Dailey and Bonnstetter testified that Lamar does in fact exist, they have failed to produce any evidence beyond their testimony confirming his existence. Second, there is a dispute over whether Dailey crosschecked any information that he learned from the supposed informant and whether Dailey lied about any crosschecks that he preformed. The parties further dispute whether it was legally permissible for Defendants to continue the search after it became clear the description of 1015 N. Laramie in the warrant did not match what they found at the Plaintiffs' house during the search or after they learned the property belonged to the Plaintiffs and not to Lawrence Tolliver, the search's target. Importantly, in its March 23 Order, the Court found that whether the Defendant Officers reasonably should have known that there was a mistake in the warrants (and therefore should have immediately called off their search) was a genuine question of material fact for the trier of fact. [142]. Nothing has changed this finding; viewing the facts in a light most favorable to the Plaintiffs, a reasonable jury could find that the Defendants were required to cease the search as soon as they entered the building and discovered the discrepancies between the warrant and reality. See *Jones v. Wilhelm*, 425 F.3d 455, 463 (7th Cir. 2003) (plaintiffs' Fourth Amendment rights were violated when officer "knew the warrant did not

particularly describe the place to be searched . . ., but failed to immediately stop execution and seek the necessary clarification of a warrant.") Thus, a jury must decide as a credibility issue whether the Defendants had probable cause to acquire the warrant and whether they acted reasonably in executing the warrant. Accordingly, Defendants' motion for summary judgment is denied with regard to Counts III, IV, VI and VIII.[4]

Defendants argue, in the alternative, that the individual Defendants are entitled to qualified immunity. Under the doctrine of qualified immunity, officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly statutory or constitutional rights of which a reasonable person would have known." *Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts apply a two-step test to determine whether qualified immunity applies: (1) does the plaintiffs' claim state a violation of their constitutional rights and (2) were those rights clearly established at the time of the violation. *Id.* Unfortunately for Defendants, the right at stake here is the Fourth Amendment—a clearly established right. See, for example, *Lawson v. Veruchi*, 637 F.3d 699, 705 (7th Cir. 2011) (finding that "if [the Defendant Officer] had knowingly included this false information [in the warrant], then he also would not be entitled to qualified immunity because it was clearly

---

[4] The parties dedicate significant time disputing whether the police department's internal report related to the same incident is admissible under the Rules of Evidence (Pl. Exhibit 35). It is not necessary to decide that question in order to resolve Defendants' motion for summary judgment. Accordingly, the Court will reserve ruling at this time; the parties may present the issue again in the context of pre-trial motions *in limine*. Similarly, because the existence of triable issues of fact as to Counts III, IV, VI, and VIII is evident from the discussion above, the Court need not consider the exhibit tendered with Plaintiffs' motion to supplement their Local Rule 56.1 statement of additional facts; that motion [211] is denied without prejudice as moot. Defendants' motion to deem admitted and strike Plaintiffs' Local Rule 56.1 statement of additional facts in part [201] also is denied. To begin with, it appears that Plaintiffs did file both a response to Defendants' statement of undisputed facts [189] and a separate statement of additional facts [190]. In any event, the existence of disputed and triable issues of fact was so clear from the totality of the submissions in this case that the requested sanction – deeming all of Defendants' statements of fact admitted – would have been disproportionate to any harm or prejudice.

established 'that a warrant request violates the Fourth Amendment if the requesting officer knowingly, intentionally, or with reckless disregard for the truth, makes false statements in requesting the warrant and the false statements were necessary to the determination that a warrant should be issued'") (quoting *Knox v. Smith*, 342 F.3d 651, 658 (7th Cir. 2003)). And as discussed above, there remain material fact disputes as to whether the Plaintiffs' Fourth Amendment rights were violated either in the validity or the execution of the warrant. Therefore, Defendants motion for summary judgment on a basis of qualified immunity is denied.

### B.     Counts I, II, VII

Plaintiffs argue in Counts I and II that Markee Jr. and Zion were assaulted because they believed they were in danger of being battered by the Defendant Officers' canine. Under Illinois law, an assault requires "(1) a threatening *gesture*, or an otherwise innocent gesture made threatening by accompanying words, that (2) creates a reasonable apprehension of an *imminent* battery." *Kijonka v. Seitzinger*, 363 F.3d 645, 647 (7th Cir. 2004); see also Ill. Comp. Statute, 5/12-1(a).

In this case, the dog was leashed and present in the apartment for only ten to fifteen minutes. The parties dispute whether the dog was muzzled and whether it was barking. Markee testified that his children "clinch[ed] up" when they saw the dog, yet provides no evidence that anything other than the dog's presence in the room scared the children. Although encounters with police officers engaged in executing search warrants may generate some level of stress for everyone at the scene, the presence of a trained drug sniffing police dog makes the Defendants' in this case no more liable—even if in hindsight the dog was unnecessary—than any other officer would be for possessing a

revolver or nightstick under circumstances where no weapons of any kind were necessary. See, *e.g.*, *Navrail v. Parker,* 726 F. Supp 800, 804 (D. Colo. 1989) (granting police officer's motion for summary judgment because presence of a trained police attack dog does not amount to assault); see also Il St Ch 50 § 710/2 (peace officers have the right to possess and use firearms in connection with their official duties). Plaintiffs also claim that the children received therapy after the incident, but follow the claim with "CITE." In view of the authority cited above and the complete lack of evidence adduced at the summary judgment stage, no reasonable jury could find that the mere presence of a drug sniffing dog amounts to an assault. Accordingly, summary judgment is granted with respect to Claims I and II.

Finally, Plaintiffs argue in Count VII of their First Amended Complaint that Defendants' conduct in the acquisition and execution of the warrant amounted to intentional infliction of emotion distress ("IIED"). The Court notes that Plaintiff failed to respond to Defendants' arguments on Count VII, which may indicate that Plaintiffs do not intend on pursuing this claim. Regardless of Plaintiffs' intent, the claim cannot survive a motion for summary judgment.

To establish an IIED claim under Illinois law, a plaintiff must prove that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to cause or was aware of a high probability that his conduct would cause severe emotional distress; and (3) the defendant's conduct did in fact cause such distress. *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 983 (7th Cir. 2007) (citing *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003)). Defendants challenge the sufficiency of Cooper's allegations as to all three elements.

To satisfy the first element, "a defendant's conduct must be 'so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Stokes v. Board of Education of the City of Chicago*, 599 F.3d 617, 626 (7th Cir. 2010) (citing *Feltmeier*, 792 N.E.2d at 83). The Coopers have offered no evidence explaining how the search—including the use of the dog—even if found to be without probable cause, was "so extreme as to go beyond all possible bounds of decency." Given such an absence of evidence, even viewing the facts in the light most favorable to Plaintiffs, no reasonable jury could find for Plaintiffs on the IIED claim. See *id.* (affirming district court's grant of summary judgment because even though the Defendant secured the arrest of the Plaintiffs on the basis of mistaken information, its action did not come close to being extreme and outrageous). The Court also notes that Plaintiffs have failed to produce any evidence that Defendants intended to cause or were aware of a high probability of causing emotion distress, or that Defendants actually did cause emotional distress.

In short, Plaintiffs failed to produce any evidence as to any of the three requirements of an IIED claim. Defendants' motion for summary judgment therefore is granted with respect to Claim VII.

## IV.    Conclusion

For the foregoing reasons, Defendants' motion for summary judgment [173] is denied with respect to Claims III, IV, VI, and VIII and granted with respect to claims I, II and VII. In addition, Defendants' motion to deem admitted and strike Plaintiffs' Local Rule 56.1 statement of additional facts in part [201] is denied, and Plaintiffs' motion to

supplement their Local Rule 56.1 statement of additional facts [211] is denied without prejudice as moot.

Dated:  September 28, 2011

_____
Robert M. Dow, Jr.
United States District Judge