Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert M. Dow, Jr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 2144 | **DATE** | 5/16/2012 |
| **CASE TITLE** | Cooper et al. vs. Dailey et al. | | |

**DOCKET ENTRY TEXT**

Before the Court are Plaintiffs' and Defendants' motions *in limine* [232]. For the reasons below, Plaintiffs' motions are granted in part and denied in part and Defendants' motions are granted in part and denied in part.

■[ For further details see text below.]     Docketing to mail notices.

## STATEMENT

**I.**    **Plaintiffs' Motions**:

    1. *Motion to bar argument of financial consideration*

      Defendants do not object to Plaintiffs' motion to bar argument regarding improper financial considerations. Therefore, Plaintiffs' motion *in limine* No. 1 is granted.

    2. *Motion to bar argument of contingency fee arrangement*

      Defendants do not object to Plaintiffs' motion to bar argument of the contingency fee arrangement between Plaintiffs and their counsel. Plaintiffs' motion *in limine* No. 2 therefore is granted.

    3. *Motion to bar evidence of financial hardship for Defendants*

      Plaintiffs' motion *in limine* No. 3 is granted without objection. Defendants are barred from introducing any evidence of financial hardship.

    4. *Motion to bar argument of what Chicago Police Officers "do and do not do"*

      Ruling on Plaintiffs' motion *in limine* No. 4 is reserved. While Defendants do not object to this

| **STATEMENT** |
|---|

motion, the scope of testimony and evidence that might lie within the Plaintiff's cryptic motion is unclear. The Court reminds the parties, however, that any evidence or argument that the parties may seek to elicit concerning what Chicago Police Officers "do" and "do not do" must be consistent with the rest of Court's rulings.

**5.** *Motion to call non-party city employees as adverse witnesses*

Plaintiffs' motion *in limine* No. 5 is granted. Defendants do not object to Plaintiffs' calling non-party city employees as adverse witnesses.

**6.** *Motion to Introduce 404(b) Evidence*

Plaintiffs' motion *in limine* No. 6 is granted in part and denied in part. Under Federal Rule of Evidence 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." It may be admissible, however, to show motive, opportunity, intent, plan, knowledge, identity, or absence of mistake. *Id.* To determine admissibility under Rule 404(b), the court considers whether "(1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." *United States v. Hicks*, 635 F.3d 1063, 1069 (7th Cir. 2011); see also *Treece v. Hochstetler*, 213 F.3d 360, 363-64 (7th Cir. 2000).

Plaintiffs' first seek to introduce evidence of the findings set forth in the underlying complaint register ("CR") in which the police department conducted an internal investigation of the allegations at issue in this case. Defendants argue that under Seventh Circuit law, CRs relating to the events giving rise to this case are not admissible because evidence of violations of the general rules and policies is inadmissible. See *Thompson v. City of Chicago*, 472 F.3d 444, 453-456 (7th Cir. 2006). The Court agrees with Defendants—consistent with *Thompson*, the underlying CRs are inadmissible as evidence of their findings. The Court also concludes that allowing into evidence the findings of the CR in the underlying incident would be substantially more prejudicial than probative given the Seventh Circuit's unequivocal statement that violations of police regulations are "completely immaterial" to whether a federal constitutional violation has been committed by the officer in question. See also Section II.7 below. With that said, statements that Defendants made during the CR investigation pertaining to the incident giving rise to this case are not hearsay if offered as party opponent admissions under Federal Rule of Evidence 801(d)(2)(A). See, *e.g.*, *Rothwell v. City of Chicago*, 2011 WL 5169419, at *3 (N.D. Ill. Oct. 31, 2011). Those statements—as well as statements made by others who may testify at trial—also constitute prior statements that may be used for impeachment if a witness's testimony at trial departs from what he or she said during the CR investigation. *Id.* [1]

> [FN1] As this Court previously has stated, because the jury "should not hear evidence that there was an [internal] investigation, the reasons for undertaking the investigation, or the findings and recommendations of the IPRA," yet the statements made during that investigation may be admissible as party opponent admissions or for

| **STATEMENT** |
|---|

impeachment purposes, the parties must tread carefully in eliciting testimony in this area. "Any complications that may arise from Plaintiff's perceived need to reference prior statements, while keeping all reference to IPRA out of the case, may be averted by a stipulation – or, absent a stipulation, by carefully framing the questions to the witness in terms of generic references to prior statements made by the witness that were transcribed, without reference to the specific context in which the statements were made." *Bruce v. City of Chicago*, 2011 WL 3471074, at *6 (N.D. Ill. July 29, 2011).

Plaintiffs next seek to introduce evidence of any findings in any relevant CRs that have been produced or should have been produced. In regard to those CRs that have been produced to date, none involves an incident that is similar enough to the issues in this case to be relevant or probative of intent, plan, modus operandi, or absence of mistake and thus admissible under Rule 404(b).

However, as to the CR and pending investigation into Defendant Officer Dailey's false police call following his DUI, the Court reserves its ruling at this time. As of the time of the briefing on this motion, it was not clear whether Defendants had produced the underlying records despite the Court's prior rulings granting Plaintiffs' motions to compel. To the extent that Defendants have not done so on the basis of an asserted privilege, the best course may be to produce the CR for in camera review by this Court (or by Magistrate Judge Nolan) for a ruling. If Plaintiffs wish to proceed in that fashion, they may bring an appropriate motion, which will be given expedited consideration. The Court also notes that regardless of whether Plaintiffs are permitted to introduce the CR under Rule 404(b), Rule 608(b) may permit Plaintiffs to question Dailey about the circumstances relating to the alleged false police call for the purpose of attacking his character for truthfulness. See *Bruce v. City of Chicago*, 2011 WL 3471074, *7 (N.D. Ill. July 29, 2011); see also *U.S. v. Manske*, 186 F.3d 770, 775 (7th Cir. 1999) (discussing the scope of Rule 608(b)). Plaintiffs may not, however, use extrinsic evidence in connection with such an inquiry. Fed. R. Evid. 608(b). The Court reserves final ruling on the scope of any possible examination of Officer Dailey in regard to the 911 call pending further discussion of the yet-unproduced CR and the possibility alluded to by defense counsel that Dailey may invoke a Fifth Amendment privilege in regard to testimony about the pending felony charge that he faces in connection with that call.

Plaintiffs next seek to introduce previous warrants for which Dailey claims a confidential informant named "Lamar" allegedly provided information. Insofar as either side seeks to introduce evidence regarding Lamar or warrants directly related to Lamar, they may do so. Such evidence is directly relevant to a central issue in dispute between the parties – namely, whether Lamar does or does not exist. These warrants, as well as other evidence about Lamar, are direct evidence of a disputed issue for trial and thus are admissible under Rule 401, irrespective of Rule 404(b).[2]

> [FN2] The parties also have mentioned at various court appearances – although not in their motions *in limine* – the indictments of Lamar Lewis and Lawrence Tolliver in federal case numbers 11-cr-682 and 11-cr-683, respectively. At the status hearing set for 5/17/2012 at 1:30 p.m., the Court will inquire further about Mr. Lewis and Mr. Tolliver and the pertinence to this case of their indictments and their testimony (if available).

**STATEMENT**

Finally, Plaintiffs seek to introduce as evidence additional warrants and an attorney-made summary of warrant applications and police reports in effort to show a pattern of swearing out false warrants. This evidence is problematic for several reasons. To begin with, it goes directly to the *Monell* claim that the parties agreed to bifurcate [164]. The Court granted the parties' joint motion on November 8, 2010 [167]. In that motion, the parties informed the Court (among other things) of Defendants' concern that "if the *Monell* claims were tried alongside with the individual claims, evidence about thousands of warrants other than the warrant at issue in this case would be represented, along with analyses of the success of those warrants and expert testimony sharply criticizing CPD officers' work in obtaining warrants." [164 at 3]. That is exactly what Plaintiffs' current motion attempts to do by seeking to introduce such evidence during the trial of Plaintiffs' non-*Monell* claims.

In addition, the manner in which Plaintiffs have gathered and attempted to present this evidence – using attorney-created documents and arguments – raises concerns about the attempt to present specialized or other technical opinion evidence through lay witnesses. Plaintiffs themselves refer to "statistical analysis" in explaining why they believe the evidence of other warrant applications and the summary document is inadmissible, but they offer nothing in the way of detailed explanation of the methodology that has been employed to support whatever conclusions they would like to present for the jury's consideration. Nor do they explain any controls that could be used to establish the similarities (or differences) between the circumstances surrounding the 182 other search warrants and the circumstances at the time that the Officers sought the search warrant in this case.

If Plaintiffs wished to present this type of evidence – and they still may do so at the *Monell* stage of the case – they may be able to present their theories in a manner that would be both sufficiently reliable and comprehensible to the jury through the testimony of an expert witness who has performed analysis of the data using an explainable methodology and drawn appropriate conclusions that follow from such analysis. See *Obrycka v. City of Chicago*, 2012 WL 601810, at *7 - *8 (N.D. Ill. Feb. 23, 2012) (allowing "code of silence" evidence presented by expert in statistics and law enforcement administrative, organizational, and management procedures in support of *Monell* claim). What we have at this point, however, is sufficiently attenuated and ill-presented such that its probative value is substantially outweighed by the potential for confusion of the issues and lack of juror comprehension as to be inadmissible at this (non-*Monell*) stage of the case. See, *e.g.*, *Carlson v. Bukovic*, 2009 WL 1575548, at *6 (N.D. Ill. June 4, 2009) ("Evidence may be excluded if its probative value is substantially outweighed by the danger of jury confusion"). Finally, if Plaintiffs were permitted to present evidence of the pattern that they claim exists as to the 182 warrant applications that they have studied, the potential for a plethora of "trials within the trial" (see *Jones v. Hamelman*, 869 F.2d 1023, 1027 (7th Cir. 1989); *Heflin v. City of Chicago*, 1996 WL 28238, at *2 (N.D. Ill. Jan. 22, 1996)) also militates against allowing the presentation of such evidence under Rule 404(b) in this instance. For all of these reasons, Plaintiffs may not introduce into evidence the other warrants that are not directly relevant to the case at hand or the summary of those warrants put together by their counsel. Accordingly, Plaintiffs' motion *in limine* No. 6 is granted in part and denied in part in accordance with the above opinion. This ruling is without prejudice to Plaintiffs' ability to renew any and all arguments relating to the alleged pattern during any subsequent *Monell*-related proceedings in this case.

## STATEMENT

**7.** *Motion to Bar Testimony of Connie Kuriata and Any Reopening of Discovery*

As previously discussed, Plaintiffs' motion *in limine* No. 7 is granted in part for the reasons stated on the record at the pre-trial conference on March 21, 2012; however, ruling is reserved as to any potential use by Defendants of testimony by Ms. Kuriata pending a determination by the Department of Justice in regard to whether she may have any relevant testimony to present at trial. Should Defendants see a potential use for Ms. Kuriata's testimony at trial, they may at that time bring a motion to disclose her as a witness and set forth the potential testimony that they seek to elicit. In the meantime, the Court is not persuaded that an advisory opinion would be appropriate.

**II. Defendants' Motions in Limine**

**1.** *Motion to Bar Non-Party Witnesses from the Court Room*

Plaintiffs agree with Defendants' motion *in limine* No. 1, which therefore is granted.

**2.** *Motion to Bar Argument that the Jury should Send the City a Message with a Verdict*

Plaintiffs have no objection to Defendants' motion *in limine* No. 2, which therefore is granted.

**3.** *Motion to Bar reference to lawsuits, criminal investigations, scandals or politics involving the city or its employees*

The Court reserves ruling on Defendants' motion *in limine* No. 3 To the extent that Plaintiffs seek to reference or introduce evidence concerning other lawsuits, criminal investigations, scandals, or politics involving the City or its employees and those subjects are not addressed elsewhere in this opinion, Plaintiffs must raise the issue with the Court and opposing counsel with specificity outside the presence of the jury and with sufficient advance notice to permit argument and an opportunity for the Court to make a reasoned determination on the matter.

**4.** *Motion to Bar Comments of the City's Failure to Call Witnesses or produce Evidence*

Defendants' motion *in limine* No. 4 is granted in part. It would be improper for Plaintiffs to insinuate without evidentiary support that Defendants are purposefully attempting to hide evidence or a witness, particularly since Plaintiffs bear the burden of proving their case. However, the Court is not barring Plaintiffs from arguing that there are deficiencies in Defendants' case due to the absence of testimony by certain individuals or the absence of certain evidence. Rather, it is merely improper for Plaintiffs to insinuate that Defendants are purposefully hiding evidence. The Court will instruct the jury as to the Plaintiffs' burden of proof. See *Bruce v. City of Chicago*, 2011 WL 3471074, at *8 (N.D. Ill. Jul. 29, 2011).

**5.** *Motion to Bar Reference to Settlement Negotiations*

Plaintiffs have no objection to this motion and thus Defendants' motion *in limine* No. 5 is granted.

**STATEMENT**

**6.** *Motion to Bar Argument of Police Cover Up and "Code of Silence"*

Defendants' motion *in limine* No. 6 is granted in part. Defendants argue that such evidence is akin to prior bad acts evidence and would violate Federal Rules of Evidence 401, 402, and 403. However, "[p]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *United States v. Abel,* 469 U.S. 45, 52 (1984). Indeed, "[a] party's and a witness's common group membership is probative of bias * * *." *Townsend v. Benya,* 287 F. Supp. 2d 868, 876 (N.D. Ill. 2003). Thus, to the extent that Plaintiff focuses on the officers and incidents involved in this case, Plaintiff may explore the possibility that the defense witnesses in this case are biased because of loyalty to one another. See, *e.g., Saunders v. City of Chicago*, 320 F. Supp. 2d 735, 740 (N.D. Ill. 2004); *Galvan v. Norberg*, 2006 WL 1343680, at *3 (N.D. Ill. May 10, 2006) (denying motion *in limine* seeking to bar "code of silence" evidence since "evidence or argument of this type can go to the issue of the bias or motivation of witnesses"). In addition, because Plaintiffs have claimed that Defendants were involved in a conspiracy with other non-Defendant members of their police team or unit, Plaintiffs are not prohibited from arguing that non-Defendant members of the team might be subject to the same "group membership" bias referenced above. Nevertheless, the Court agrees with Defendants that generalized allegations of police misconduct by officers other than the named Defendants (and their alleged co-conspirator team members) would be akin to impermissible propensity evidence. *Maldonado v. Stinar,* 2010 WL 3075680, at *4 (N.D. Ill. Aug. 5, 2010) (allowing evidence of bias among the particular officers involved in the incident at issue there, while excluding generalized evidence of a "code of silence" or "blue wall" (citing *Christmas v. City of Chicago,* 691 F. Supp. 2d 811, 819 (N.D. Ill. 2010) (same), and *Moore v. City of Chicago,* 2008 WL 4549137, at *6 (Apr. 15, 2008) (same))); see also *Betts v. City of Chicago*, 2011 WL 1837805, at *5 (N.D. Ill. May 13, 2011); *Caldwell v. City of Chicago*, 2010 WL 380696, at *3 (N.D. Ill. 2010) (barring plaintiff from presenting evidence showing police generally protect or cover up for each other and that there is a code of silence in the CPD). Plaintiffs have not presented expert testimony in support of any "code of silence" theory, at least at this stage of the case. Compare *Obrycka*, 2012 WL 601810, at *7. Defendants' sixth motion *in limine* is granted in part and denied in part as follows: (1) Plaintiff may present evidence and elicit testimony to probe whether the Defendant Officers (and any alleged co-conspirator team members) are biased in their testimony concerning the incidents at issue in this case out of loyalty to one another; (2) Plaintiff may not use the term "code of silence" as this term is unduly prejudicial and no supported by sufficient analysis (see *Obrycka*); and (3) Plaintiff may not introduce evidence that law enforcement officers typically adhere to a "code of silence" or seek to cover up misconduct in order to protect fellow officers.

**7.** *Motion to Bar Reference to Violations of Police Department Rules, Policies and Regulations*

Defendants' motion *in limine* No. 7 is granted in part. In *Thompson v. City of Chicago*, 472 F.3d 444, 455 (7th Cir. 2006), the Seventh Circuit held that the "violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established." Under *Thompson*, any attempt to elicit testimony concerning violations of general orders, rules or polices of the CPD as evidence of a federal constitutional violation appears to be forbidden under Rule 401. All of Plaintiffs' claims for trial are federal claims that arise under Section 1983, and thus are controlled by the rule articulated in *Thompson*. Seventh Circuit pattern jury instruction 7.04, referenced by Plaintiffs,

| STATEMENT |
|---|

was adopted long before *Thompson* became the law of this circuit. However, the Court repeats that statements that Defendants previously have made about the incident giving rise to this case may be admissible if offered as party opponent admissions under Federal Rule of Evidence 801(d)(2)(A). See, *e.g.*, *Rothwell v. City of Chicago*, 2011 WL 5169419, at *3 (N.D. Ill. Oct. 31, 2011). Those statements—as well as statements made by others who may testify at trial—may be used for impeachment if a witness's testimony at trial departs from what he or she previously stated. *Id*.

8. *Motion to Bar Inference and Argument that the Affidavit and Complaint for the Search Warrant was Invalid or Void at the Time of Issuance*

Defendants' motion *in limine* 8 is denied in part. Pursuant to Seventh Circuit precedent, Plaintiff is permitted to introduce evidence to prove that a "reasonably well-trained officer in the position of the defendant would have known that the action lacks probable cause and that he should not have applied for the warrant." *Neiman v. Keane*, 232 F.3d 577, 580 (7th Cir. 2000) (citing *Simmons v. Pryor*, 26 F.3d 650, 653 (7th Cir. 1993)); see also *Horne v. Wheeler*, 2005 WL 2171151, at *4 (N.D. Ill. Sept. 6, 2005) ("The Seventh Circuit has extended the *Franks* standard to civil actions for damages, like the case at hand, in which a plaintiff alleges that a police officer deliberately misrepresented facts in a warrant application"). In civil cases—as in criminal cases—Plaintiffs' may introduce evidence designed to overcome the "presumption that the warrant affidavit was valid" by making a "substantial preliminary showing that [the Defendant] made false statements in the warrant affidavit in knowing or reckless disregard for the truth." *Perlman v. City of Chicago*, 801 F.2d 262, 264 (7th Cir. 1986) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). For example, in *Olsen v. Tyler*, the Seventh Circuit further explained that evidence that the officer purposely or recklessly withheld facts that could "negate probable cause" is "relevant" because the officer may be liable for violating the victim's civil rights. 825 F.2d 1116, 1118 (7th Cir. 1987).[3] Under the cases cited above, Plaintiffs' are permitted to introduce evidence in support of their contention that one or more Defendants made false statements in the warrant affidavit in knowing or reckless disregard for the truth in support of a Fourth Amendment claim, and Plaintiffs' claim is governed by the same standard established by *Franks* in the criminal context. See *Perlman*, 801 F.2d at 264. Having set forth in this opinion a recitation of the pertinent Seventh Circuit case law, the Court will inquire of Plaintiffs at the 5/17/2012 status conference more specifically how they propose to introduce admissible evidence at trial in support of this claim and reserves ruling on the admissibility of any *specific* line of inquiry. Cf. *Horne*, 2005 WL 2171151, at *3-*5 (discussing in detail evidence presented at summary judgment stage in civil *Franks* claim).

> [FN3] The Court draws to the attention of the parties the discussion of jury instructions, including a special verdict interrogatory, in *Olson*, 825 F.2d at 1118-19, in anticipation of the jury instruction conference that will be held at some point during trial.

9. *Motion to Bar Evidence of Complaints, Lawsuits, Disciplinary Proceedings against Defendant Officers*

Defendants' motion *in limine* No. 9 is granted in part and denied in part, in accordance with the Court's rulings in Plaintiffs' motion *in limine* No. 6.

**STATEMENT**

**10.** *Motion to Bar Testimony or Imply that Officers are Being Paid by the City to Appear in Court*

Defendants' motion *in limine* No. 10 is granted without objection.

**11.** *Motion to Par Plaintiffs Counsel from Creating Adverse Trial Publicity*

Defendants' motion *in limine* No. 11 also is granted without objection.

**12.** *Motion to Bar Testimony and Evidence that Defendants are Indemnified by the City*

Defendants' motion *in limine* No. 12 is granted. The City of Chicago is responsible for indemnifying compensatory damage awards that Plaintiffs may receive against Defendants because it is undisputed that Defendants were acting within the scope of their employment at the time of the incident that gave rise to this action. Defendants seek to exclude any references to the City of Chicago's indemnification obligations on the ground that such obligations are irrelevant to the issues of liability that are at issue in this case. Defendants further contend that they would suffer prejudice if the jury were apprised of the City's indemnity obligations, because jurors may be more likely to find for Plaintiff on liability or inflate a compensatory damages award if they knew that Defendants themselves would not be on the hook financially.

The Seventh Circuit has sided with Defendants on this issue to a point, holding that "[i]n the general case courts exclude evidence of indemnification out of a fear that it will encourage a jury to inflate its damages award because it knows the government – not the individual defendants – is footing the bill." *Lawson v. Trowbridge*, 153 F.3d 368, 379 (7th Cir. 1998); see also *Kemezy v. Peters*, 79 F.3d 33, 37 (7th Cir. 1996) ("When the defendant is to be fully indemnified, such evidence, far from being required, is inadmissible"). However, when defendants who benefit from a right to indemnification nevertheless claim an inability to pay damages, such defendants are deemed to have "opened the door" to evidence of the statutory entitlement to indemnification. Thus, evidence of indemnification is inadmissible unless defendants open the door by injecting their personal financial circumstances into the case. Additionally, if Defendants choose to "apprise the jury of the fact that the individual officers will have to bear [punitive] damages out of their own pockets," then "fairness would dictate that the jury also be informed of the true situation (indemnification) as to compensatory damages" (*Galvan*, 2006 WL 1343680, at *2), subject to an appropriate limiting instruction that "Defendants' finances address punitive damages only." *Townsend*, 287 F. Supp. 2d at 874.

**13.** *Motion to Bar Evidence of Plaintiffs' "Good" Character*[4]

Defendants' motion *in limine* No. 13 is granted in part. Defendants argue that Plaintiffs should be barred from presenting evidence of their good character, such as personal and professional accomplishments. See Fed. R. Evid. 404 ("Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion * * *"). Plaintiffs contend that character is relevant to both credibility and to damages. While Defendants are correct that under Rule 404, evidence of person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith, it is admissible if Defendants try to attack Plaintiffs character. See Fed. R. Evid. 608 (allowing the use of certain character evidence or opinion of character to impeach a witness' credibility); see

| STATEMENT |
|---|

also Fed. R. Evid. 405.

> [FN4] Defendants labeled two Motions *in Limine* as "12." The Court addressed the first one as 12 and will adjust the numbering of the second "12" and "13" to Motion *in Limine* "13" and "14" for the purpose of this Order.

**14.** *Motion to Bar Plaintiff From Testifying as to any Emotional or Medical Issues*

Defendants' motion *in limine* No. 14 is granted in part and denied in part. Plaintiffs, as lay persons, may not testify as to any diagnosis or condition. See *Mehta v. Council for Jewish Elderly*, No. 95 C 1156, 1996 WL 272520, at *2-3 (N.D. Ill. May 20, 1996) But Plaintiffs may relate to the jury their condition following the incident based on their recollections and subject to cross-examination. See *Ellis v. Country Club Hills*, 2011 WL 6001148, at * 7 (N.D. Ill. Dec. 1, 2011).

*[signature]*