+

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARKEE COOPER, SR., ZION COOPER AND MARKEE COOPER, JR., by and through their Parents and guardians MARKEE COOPER, SR. and SHENITA COOPER, | ) ) ) ) ) ) | Case, No.: 07 CV 2144 |
| Plaintiffs, | ) ) | |
| v. | ) ) | Hon. Robert W. Dow, Jr. |
| Chicago Police Officers S. DAILEY, No. 10890, M. BONNSTETTER, No. 15963, F. MACK, No. 198404, S. REINA, No. 2622, D. ROSS, No. 177, and The CITY OF CHICAGO | ) ) ) ) ) | Magistrate Judge Nolan |
| Defendants. | ) | |

**DEFENDANTS DAILEY, BONNSTETTER, ROSS, REINA AND MACK'S CONSOLIDATED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO RULE 50(A) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Now comes Defendants S. Dailey, No. 10890, M. Bonnstetter, No. 15963, F. Mack No. 198404, S. Reina, No. 2622 and D. Ross, No. 177, by and through their attorney Gregory T. Mitchell, Law Office of Gregory T. Mitchell, P.C. respectfully moves for judgment as a matter of law. In support of this motion that following is submitted:

**I.     The Defendants Are Entitled to Judgment as a Matter of Law**

    **A.     Fed.R.Civ. P. Rule 50 – Judgment as Matter of Law - Standard of Review**

Pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, "if a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (a) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the

1

party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

**1. Officer Sean Dailey is Entitled to Judgment in his Favor on the Search Warrant Claims**

As to the issuance of a search warrant, the Fourth Amendment requires that a warrant be supported by probable cause and particularly describe the place to be searched. *Jones v. Wilhelm*, 425 F.3d 455, 462 (7th Cir. 2005). Before an officer may undertake a search, the Fourth Amendment "requires the judgment of a magistrate on the probable-cause issue and the issuance of the warrant." *Id. (quoting Chambers v. Maroney,* 399 U.S. 42, 51 90 S.Ct. 1975, 261 L.Ed.2d 419 (1970)). In addition, "the Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one 'particularly describing the place to be searched and the persons or things to be seized." *Id. (quoting Maryland v. Garrison,* 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987)). Affidavits and complaints supporting warrants are presumed valid. *United States v. Johnson*, 580 F.3d 666, 670 (7th Cir. 2009) and the validity of the warrant is assessed on the basis of the information that the officer disclosed, or had a duty to discover and to disclose to the issuing Magistrate. *Guzman v. City of Chicago,* 565 F.3d 393396 (7th Cir. 2009). Information that emerges after the warrant is issued has no bearing on this analysis. *Id.*

In denying defendants' motion for summary judgment, the district court relied on three (3) disputed facts: (1) "that plaintiffs argue that the confidential informant Lamar did not exist"; (2) "there is a dispute over whether Dailey crosschecked any information that he learned from the supposed informant; and (3) whether Dailey lied about any crosschecks that he performed." R. 218. The district court further denied Officer Dailey's defense on the basis of qualified immunity solely because of the disputed fact whether Dailey "knowingly included false

2

information in the warrant," (i.e. the very existence of the C/I) citing *Lawson v. Veruchi*, 637 F.3d 699, 705 (7th Cir. 2011).

Now that the plaintiff has had a full opportunity to present its evidence, it is undisputed that the confidential informant relied on by Officer Daily did *in fact* exist and that his name is "Lamar Lewis." Not only did Officer Bonnstetter identify Lamar Lewis as the confidential informant during his trial testimony, Officer Bonnstetter further testified that he knew as "Lamar" on February 16, 2007, and that "Lamar Lewis" was the confidential that provided information to Officer Dailey initially on February 10, 2007, again on February 15-16, 2007, and was the same person who positively identified 1015 North Laramie as the building to be searched for illegal drugs and Lawrence Tolliver and "Guy". Officer Bonnstetter further testified that on February 10, 2007, Officer Dailey identified Lamar Lewis as the same confidential informant that had provided the reliable information which lead to the arrest and the seizure of illegal drugs from Carlton Toliver in January 2006.

It is well settled, that as a matter of law, when challenging the validity of a search warrant it is not enough to show that an informant lied to the government officer, who then included those lies in the complaint to defeat the protection of qualified immunity for a search warrant that was valid when issued by a judge. Instead the evidence must establish that the officer submitting the complaint for search warrant, [Officer Sean Dailey] perjured himself or acted recklessly because he seriously doubted or had obvious reasons to doubt the truth of the allegations in the search warrant. *United States v. Johnson*, 580 F.3d 666, 670 (7th Cir. 2009) (*citations omitted*). Because plaintiffs have abandoned any claim that Officer Dailey fabricated the existence of "Lamar" and has made no claim that "Lamar" ***did not*** provide the very detailed information relied on by the judge to support the probable cause finding for the issuance of the

search warrant, the only issue which remains for the jury to decide is whether plaintiffs have made a substantial showing that Officer Dailey acted recklessly because he failed to crosscheck the information provided by the confidential informant -Lamar. This issue is not proper because the "crosschecking" that plaintiffs have alleged defendant Dailey could have completed would not have caused him to seriously doubt or provide obvious reasons to doubt the truth of the allegations in the search warrant.

Defendant further submits that Officer Dailey's failure to "crosscheck" the detailed information about 1015 North Laramie was not reckless because nothing about the detailed, specific and timely information supplied by Lamar caused Officer Dailey to seriously doubt the veracity of the information provided. Not only had Lamar's reliability been well-established over a 24-monthg period in regard to illegal drug dealing in that general area, there was nothing "obvious" about the information provided by Lamar – either the type of drugs involved, the quantity of drugs involved, how they had been stored, the location of the subjects and/or the names of the suspected targets that would cause an experienced officer such as Officer Dailey to seriously doubt or question the information provided by Lamar, given their prior, long-term relationship.

In *Jones v. Wilhelm,* 325 F.3d 455, 462 (7th Cir. 2005) the Seventh Circuit affirmed the district courts finding that the search warrant was valid when it was issued despite the lack of diligence displayed by the police force in failing to ensure target's name and apartment number appeared on the warrant and despite the fact that the scope of the warrant turned out to be ambiguous. While reversing the district court's grant of summary judgment for the named police officer on qualified immunity grounds concerning the execution of the search warrant, the Seventh Circuit nonetheless ruled that the search warrant was valid when issued even though the

officer omitted the name of the known target of the search warrant ["Jody Gruenwald-Anderson and her apartment number] from the search warrant and where the warrant only described the placed to be searched as, "the upstairs apartment on the right at 220 W. Burnett Avenue". Citing *Maryland v. Garrison,* 480 U.S. 79, 85-86, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987) and *United States v. White*, 416 F.3d 634, 638 (7th Cir. 2005). See also *United States v. Garcia*, 528 F.3d 481, 485-486 (7th Cir. 2008) (search warrant was validly issued where police officer used "fill-in-the blanks" form, even though printed form "leads to errors and omissions" recognizing but not endorsing the language in the affidavit which is ambiguous about certain facts related to the probable cause determination.); *United States v. Marin-Buitrago,* 734 F.2d 889, 895 (7th Cir. 1984)(holding that as a matter of law, the identity of the suspect need not be material to the finding of probable cause in the issuance of a search warrant, explaining that it is the description of the criminal activities, the inclusion of the name of the suspected target that was determinative of probable cause.)

In this case, plaintiffs have offered testimony about what additional computer inquiries that could have been made to identify the owner of the 1015 North Laramie property as Markee Cooper and either target "Lawrence Tolliver" or a person know as only as "Guy". However, as every witnessed testified, none of the computer inquires would have provided any relevant information to either to support or raise a serious question that the occupant of the basement apartment was not Lawrence Tolliver or that the occupant of the second floor apartment was not a person known as "Guy". Unlike the facts in *Olsen v. Tyler,* 825 F.2d 1116 (7thCir. 1987), there is no claim that on February 15-16, 2007, Officer Dailey or any officer knew or should have known that "Lawrence Tolliver" was either in police custody or residing somewhere other than at 1015 North Laramie in the basement apartment. Additionally, there is no allegation or

claim that Officer Dailey obtained any portion of the information described in the affidavit for search warrant from anyone other than the confidential informant named Lamar. In *United States v. Johnson,* 580 F.3d 666, 671 (7th Cir. 2009) the Seventh Circuit expressly rejected the plaintiff's claim that the officer's failure to corroborate the informant's story constituted a reckless disregard for the truth – finding, that "where a police officer has received a detailed tip from a reliable informant, his failure to further corroborate the tip does not constitute recklessness." In this case, Lamar was also a reliable informant, provided detailed information about purchasing and using the illegal drugs at issue and Lawrence Tolliver was a known drug dealer target in the area identified. Clearly, the overwhelming evidence presented at trial established that several officers of reasonable competence, even Officer Cooper himself, unquestionably agree that the complaint for search warrant contained sufficient details and allegations to establish probable cause for the search of 1015 North Laramie and therefore immunity should be recognized in this instance.

In sum, considering the evidence presented by plaintiffs, defendant Dailey submits that as a matter of law, there is no evidence to suggest that on February 16, 2007, when he obtained the search warrant from Circuit Court Judge Nickolas Ford that it would be clear to any reasonable officer that his conduct, in obtaining the search warrant for 1015 North Laramie was unlawful under these circumstances. Accordingly, Officer Dailey is entitled to judgment in his favor on the merits on the search warrant claim.

### 2. Defendant Ross is Entitled to Judgment in his Favor on the Seizure Claim

The undisputed evidence has established that Lieutenant Ross was the supervisor of the search warrant execution team after the search warrant had been properly reviewed, approved

and issued by a Cook County Judge. As part of execution team, neither Lieutenant Ross nor any named defendant, violated plaintiffs' Fourth Amendment rights simply by being an assigned member of the search warrant execution team.

In regards to the subsequent alleged seizure pending the arrival of the canine unit, plaintiffs have offered no evidence that Officer Ross directly ordered, implicitly by a show of superior rank or authority, that anyone in the Cooper family was not free to leave during this waiting period. In fact, Lieutenant Ross testified that after Officer Cooper informed him that his family was planning to go out to dinner to celebrate his birthday, Cooper was specifically advised that all family members were free to leave because the canine sniff search only required that Officer Cooper remain with the residence for a short time.

Acknowledging this, plaintiff Cooper offered the testimony of Sergeant Boyle, who testified that he "ordered" Officer Cooper to cooperate and that Cooper as a police officer, was obligated to cooperate in the investigation when "ordered" to do so. Plaintiff Cooper also testified that he consented to the canine search and cooperation with the search team because he was ordered to do so by his direct supervisor, Sergeant Boyle. Plaintiff Cooper also testified that he knew that Lieutenant Ross was the senior Chicago Police Officer on the scene, thereby by his conduct, Lieutenant Ross implicitly ordered Officer Cooper to involuntarily remain inside his residence until a canine sniff search for possible illegal drugs could be completed. Under these circumstances, plaintiff Cooper seeks to have the jury find that he and family were illegally seized in violation of the Fourth Amendment because he did not consent to the canine search.

A seizure has been defined as "a governmental termination of freedom of movement *through means intentionally applied.*" *Leaf v. Shelnutt*, 400 F.3d 1070, 1089 (7th Cir. 2005)

7

(quoting *Brower v. County of Inyo,* 489 U.S. 593, 597, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) (emphasis in original). A person is seized "only if, in view of all of the circumstances surrounding the incident, a reasonable person [in the subject's position] would have believed that he was not free to leave." *Id. (*quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). As well, for a seizure to have taken place, "the subject [must] actually yield *to a show of authority from the police or be physically touched by the police.*" *Id.* (quoting *Tom v. Voida*, 963 F.2d 952, 957 (7th Cir. 1992)) (emphasis added).

Additionally, whether or not "consent" was provided voluntarily or resulting from duress, coercion, or acquiescence to authority" is a question of fact to be determined from the totality of circumstances." *United States v. McGraw,* 571 F.3d 624, 628-29 (7th Cir. 2009) (quoting *Schneckloth v. Bustemonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). Factors bearing on this inquiry include: (1) the person's age, intelligence, and education; (2) whether he was advised of his constitutional rights; (3) how long he was detained before he gave his consent, (4) whether his consent was immediate or prompted; (5) whether any physical coercion was used, and (6) whether the individual was in police custody when he gave his consent. *Id.* A claim of police authority is merely a factor that must be weighed along with the other factors in the totality- of- the-circumstances" analysis. *Id.,* at 630, (citing *United States v. Nafzger*, 965 F.2d 213, 216 (7thCir. 1992).

In this case, there was no evidence presented by plaintiff to establish there was a governmental termination of freedom of movement *through means intentionally applied* by any member of the search warrant execution team or Lieutenant Ross. Moreover, the evidence presented established that Officer Cooper is a highly educated and experienced tactical police officer, former investigator for the City of Chicago Inspector General's Office and a career

8

military police officer who unquestionably understood his constitutional rights and his right to refuse any request for a search of his private residence without a valid search warrant. Officer Cooper also knew that an order given by a superior officer in violation of his constitutional rights was patently invalid and illegal. It is also undisputed that Officer Cooper was also permitted to review the complaint for search warrants, to call his supervisor and discuss whether he *should* cooperate with the requested search, and that after this brief discussion he informed Lieutenant Ross that he was fine with the plan to call in the canine unit and stated, "go ahead, you can, search, I have nothing to hide." The evidence is also undisputed that Officer Cooper was never placed under arrest, was never threatened, nor promised anything if he agreed to cooperate. In fact, there is no indication from any testimony that Officer Cooper was under duress of any kind. Significantly, Officer Cooper gave his consent to the canine sniff of both units within a few minutes of being asked by Lieutenant Ross and immediately after talking with his supervisor, Sergeant Boyle via his cell phone. Lastly, the evidence presented at trial established that the interaction between Lieutenant Ross and Officer Cooper was at all times calm and fully cooperative throughout. See *United States v. Santiago*, 428 F.3d 699, 705 (7thCir. 2005) (affirming that consent was freely and voluntarily given despite claim by defendant that consent was given only because defendant was rightfully concerned for the welfare of his family, where "rightful concern" did not amount to psychological pressure, and where the entire incident took only twenty minutes, and where encounter was devoid of any badgering or harassment.); see also *United States v. Biggs,* 491 F.3d 616, 622 (7th Cir. 2007) (finding consent voluntary despite defendant being hand-cuffed and placed under arrest, where defendant presented testimony indicating he was "an articulate adult with a tenth grade education, a substantial employment history and an intimate familiarity of the criminal justice system."); *United States v. McGraw,*

571 F.3d. 624, 629 (7thCir. 2009)(affirming district court finding of voluntary consent despite implied right to search apartment communicated by police officers, where the "the tone of the interaction between McGraw [the defendant] and the officers at all times remained calm and cooperative."). The fact that defendant Cooper was not provided a "Consent to Search Form" which would have arguably foreclosed any consent issue in this case is not determinative for "the Constitution does not require proof of knowledge of the right to refuse as the sine qua non of an effective consent to search." *United States v. Swanson,* 677 F.Supp. 2d 1030, 1039, (N.D. Ill. 2009) (*quoting, United States v. Mendehall*, 446 U.S. 544, 588, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). Importantly, the evidence presented at trial also established that at no time did Officer Cooper indicate or communicate to Lieutenant Ross that his consent to the canine search was involuntarily or that his consent was provided under duress or pursuant to a direct order from Sergeant Boyle. Finally, the evidence presented does not establish that it was Lieutenant Ross who ordered Officer Cooper to allow the search to go forward; rather, it was Sergeant Boyle who did so. If this was, in fact, a seizure, it was Sergeant Boyle who caused the seizure, not Lieutenant Ross.

In sum, considering the evidence presented to the jury, defendant Ross submits that as a matter of law, there is insufficient evidence for a reasonable jury to conclude that on February 16, 2007, the period where the plaintiffs were inside their residence waiting for the canine unit to arrive, and during the canine sniff search of the basement and second floor apartments constituted a period of illegal seizure of plaintiffs and a violation of Officer Cooper's Fourth Amendment rights. The evidence presented to the jury clearly indicates that the canine sniff search was ordered by Lieutenant Ross after Cooper voluntarily consented and no reasonable officer in Lieutenant Ross' position would believe that his conduct in waiting for the canine unit

to arrive and the subsequent execution of the canine sniff search under these circumstances was unlawful in anyway. Accordingly, defendant Ross is entitled to judgment in his favor on the illegal seizure claim.

### 3. Defendants Dailey, Reina, Bonnstetter and Mack are Entitled to Judgment on the Illegal Seizure Claim.

Because an officer's personal liability under Title 42, United States Code, Section 1983 is premised on the alleged wrongdoers personal responsibility, defendant Dailey, Reina, Bonnstetter and Mack are entitled to judgment in their favor for serving as a member of the search warrant execution team during the canine sniff search. *Kuhn v. Goodlow,* Slip Op. 11-1762 (7th Cir. 2012). The evidence presented at trial failed to provide any evidence for a reasonable jury to find that either defendants Dailey, Reina, Bonnstetter and/or Mack caused or participated in the alleged illegal seizure of Markee Cooper or any member of the Cooper family during the execution of the canine sniff search.

### 4. Defendants Dailey, Reina, Bonnstetter and Mack are Entitled to Judgment on the Illegal Search Claim.

Because an officer's personal liability under Title 42, United States Code, Section 1983 is premised on the alleged wrongdoers personal responsibility, defendant Dailey, Reina, Bonnstetter and Mack are entitled to judgment in their favor for serving as a member of the search warrant execution team during the canine sniff search. . *Kuhn v. Goodlow,* Slip Op. 11-1762 (7th Cir. 2012). The evidence presented at trial failed to provide any evidence for a reasonable jury to find that either defendants Dailey, Reina, Bonnstetter and/or Mack caused or participated in the alleged canine sniff search of the basement and second floor apartments.

Lastly, to the extent that plaintiffs allege that the initial "protective sweep" of the

apartment was an illegal search in violation of the Fourth Amendment; this claim must be summarily dismissed as matter of law. See *Maryland v. Buie*, 494 U.S. 325, 327, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990) (explaining that a protective sweep has been defined as a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers and others … and narrowly confined to a cursory visual inspection of those places in which a person might be hiding. As the Seventh Circuit commented in *Leaf v. Shelnutt*, 400 Fe,3d at 1086, "A protective sweep, limited to "looking in closets and other spaces immediately adjoining the place of arrest," is justified "incident to an arrest … as a precautionary matter and without probable cause or reasonable suspicion." (quoting Maryland *v. Buie*, 494 U.S. at 334, 110 S.CT. 1093.)

**5. All Defendants are Entitled to Judgment on the Canine Sniff Search Claim.**

As this court previously acknowledged in denying plaintiffs' motion for partial summary judgment (R. 142), the courts, including the Seventh Circuit, have concluded that "a canine sniff test that is used to detect the presence of contraband is not a Fourth Amendment search." *United States v. Vasquez,* 909 F.2d 235, 238 (7thCir. 1990)(canine sniff of garage from public alley was not a warrantless search); *see also United States v. Brock*, 417 F.3d 692, 696-97 (7thCir. 2005) (canine sniff outside plaintiff's locked bedroom door did not constitute Fourth Amendment search); *Peals v. Terre Haute Police Dept.*, 535 F.3d 621, 628-29 (7th Cir. 2008) (presence of canine units did not make search of plaintiff's garage unreasonable.) This court further explained, that courts have relied on the fact that the police had the authority to be present at the location where the sniff took place. R. 142. (citations omitted).

The evidence presented at trial is undisputed that the execution of the search warrant at the moment the officers entered 1015 North Laramie, the basement apartment and the second floor unit, they were legally and properly inside each location pursuant to valid respective search warrants properly issued by a Cook County Judge. It is also undisputed that Markee Cooper consented to the continued search of the basement apartment and the second floor apartment after it became clear that he was not the target named "Guy" on the second floor, and that the target "Lawrence Tolliver" was not residing in the basement apartment, even though it appeared that the basement unit was being used as storage unit and not as an apartment on February 16, 2007. The evidence is also undisputed that plaintiff Cooper's consent to conduct a canine sniff search for both apartments was requested and given only after Lieutenant Ross learned from plaintiff Cooper additional information linking the target, "Lawrence Tolliver" to either the second or basement floor apartment, and possibly both.

In sum, considering the evidence presented by plaintiffs, defendants submit, that as a matter of law, there is no evidence to suggest that on February 16, 2007, the canine sniff search was conducted without the consent of plaintiff Markee Cooper and that the officer conducting the canine sniff search was legally and properly inside the 1015 North Laramie residence. Accordingly, all defendants are entitled to judgment in their favor on the claim concerning the alleged illegal canine sniff search.

**B.       The Defendants Are Entitled to Judgment Based on Qualified Immunity**

    **1. The doctrine of Qualified Immunity for Government Officials**

The doctrine of qualified immunity shields government officials against suits arising out of their exercise of discretionary functions "as long as their actions could reasonably have been

13

thought consistent with the rights they are alleged to have violated." *Jones v. Wilhelm*, 425 F.3d 455, 460 (7th Cir. 2005) (*quoting, Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court set out a two-part test for qualified immunity. First, a court must decide whether the facts, when viewed in light most favorable to the plaintiff, indicate that the officer's conduct violated some constitutional right of the plaintiff. 533 U.S. at 201, 121 S.Ct. 2151. Second, if the answer to the first question is "yes" then the court must determine whether the constitutional right violated was "clearly established" at the time the alleged violation. *Id.* The officer will enjoy qualified immunity unless the court affirmatively answers both questions. *Id.* As the Seventh Circuit further explained, in *Saucier*, the Supreme Court clearly stated that "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Jones v. Wilhelm*, 425 F.3d at 461, (quoting *Saucier,* 533 U.S. at 202, 121 S.Ct. 2151, *accord Payne v. Pauley,* 337 F.3d 767, 775-76 (7th Cir. 2003). Recently the Judge Lefkow recently explained, the "shield of immunity" confirmed by a facially valid arrest [search] warrant will be lost where the warrant was 'based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Thomas v. City of Joliet*, Slip Op. 2012 WL 1030470 (N.D. Ill.) (quoting *Messerschmidt v. Millendrer*, ___ U.S. ___, 132 S.Ct. 1235, 1244, ___ L.Ed.2d___ (2012) "Only if officers of reasonable competence could disagree on this issue should immunity be recognized." *Id.* quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)

    **2.**     **Defendant Dailey is Entitled to Qualified Immunity on the Search Warrant Claim**

14

There is no authority in the Seventh Circuit which clearly establishes that failure to corroborate details of a confidential informant's evidence through various public databases constitutes a reckless disregard for the truth, thus putting the warrant in violation of the Fourth Amendment. This is particularly so in light of the authority of *Jones v. Wilhelm,* 325 F.3d 455, 462 (7th Cir. 2005). Dailey is therefore entitled to judgment in his favor based on qualified immunity on the claim that he wrongly obtained the search warrant.

    **3.    Defendant Ross is Entitled to Qualified Immunity on the Seizure Claim**

There is no authority which clearly establishes that the conduct of Defendant Ross constituted a seizure in violation of the Fourth Amendment, either as to Cooper, who indisputably knew he could not be required to allow the dog search, or as to the other plaintiffs, who indisputably were told they were free to go, but chose to stay.

Police officers executing search warrants are entitled to qualified immunity if a reasonable officer would have believed that the execution of the warrant did not violate any established law. *Early v. Bruno*, 2020 WL 1821669 *4 (N.D.Ill) (granting summary judgment for officer executing the search warrant because said officer had no reason to believe the warrant was invalid or otherwise suspect.) citing, *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

Ross is therefore entitled to judgment in his favor based on qualified immunity for the seizure claim.

    **4.    Defendants Dailey, Reina, Bonnstetter and Mack are Entitled to Qualified Immunity on the Search Claim**

There is no authority which clearly establishes that Dailey, Reina, Bonnstetter or Mack's actions in serving as a member of the search team was such that their conduct caused any of the plaintiffs to be searched in violation of the Fourth Amendment. Dailey, Reina, Bonnstetter and Mack are therefore entitled to judgment in their favor based on qualified immunity on the seizure claim.

5. **All Defendants are Entitled to Qualified Immunity for the Canine Sniff Search Claim**

There is no authority which clearly establishes the canine sniff search under the circumstances in which it was performed was a violation of the Fourth Amendment rights of the plaintiffs. The defendants are therefore entitled to judgment in their favor based on qualified immunity.

Respectfully submitted,

*/s/ Gregory T. Mitchell*
Gregory T. Mitchell
Law Office of Gregory T. Mitchell, P.C.
18141 Dixie Highway, Suite 100
Homewood, Illinois 60430
(708) 799-9325
Email: Mitchlaw00 @comcast.net
Attorney for Individually Named Officers

## CERTIFICATE OF SERVICE

I, Gregory T, Mitchell, an attorney, certify that I caused copies of

**DEFENDANTS DAILEY, BONNSTETTER, ROSS, REINA AND MACK'S CONSOLIDATED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO RULE 50(A) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

to be served upon the person(s) below electronically pursuant to the local rules governing electronic filing.

Brendan Shiller
Shiller Preyer Law Offices
1100 West Cermak, Suite B401
Chicago, Illinois 60608
(312) 226-4590


/s/ Gregory T. Mitchell
Gregory T. Mitchell